**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| CHRISTIE SPRY, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. 0:26-cv-2027-DWF-ECW |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY**

4908-0964-7923

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................... 1

II.  BACKGROUND ................................................................................................ 2

    A.   The *Babbitt* Action and Counsel's Promise Not to File Another FLSA
    Collective Action. ....................................................................................... 2

    B.   Spry Joined *Becerra* as an FLSA Party Plaintiff and the Court Dismissed
    the FLSA Collective Claim. ........................................................................ 4

    C.   Despite Her Party Plaintiff Status in *Becerra*, Spry Initiated This Action. .. 6

III. ARGUMENT....................................................................................................... 7

    A.   The Court Should Dismiss This Action as Impermissibly Duplicative of
    *Becerra*. ..................................................................................................... 7

        1.   Spry's Purported Withdrawal from *Becerra* Was Ineffective. .......... 7

        2.   Counsel's Pattern of Successive FLSA Collective Filings and
        Litigation Conduct Further Support Dismissal. ............................... 10

    B.   In the Alternative, the Court Should Stay This Action. .............................. 12

IV.  CONCLUSION................................................................................................. 14

ii

4908-0964-7923

## I.      INTRODUCTION

This case is plaintiff Christie Spry's counsel's latest attempt to relitigate the same Fair Labor Standards Act ("FLSA") collective claim through successive, duplicative lawsuits. Over the last decade, Spry's counsel have filed a series of overlapping FLSA collective actions against Target, each asserting the same misclassification claim on behalf of substantially the same group of employees. After litigating the nationwide FLSA collective in *Babbitt v. Target Corp.* for years, counsel promised this Court that any new lawsuit would exclude the FLSA claim and proceed only on state-law theories. Counsel broke their promise by filing the *Messeck v. Target Corp.* (now *Becerra*) action asserting a duplicative FLSA collective claim—an effort this Court rejected by dismissing that claim with prejudice. Now, counsel breaks their promise yet again. Spry—who opted into *Becerra* to pursue her FLSA claim—purported to withdraw from that action and, on the very same day, filed this new lawsuit asserting a similar FLSA collective claim previously rejected by this Court.

This strategy is improper for two independent reasons. First, Spry remains a party plaintiff in *Becerra* because her purported withdrawal was ineffective under Rule 41(a), Federal Rules of Civil Procedure. As a result, this case is duplicative and must be dismissed. Second, even apart from duplication, this lawsuit is part of a pattern of serial, overlapping FLSA filings that disregard this Court's prior rulings and waste judicial and party resources. That bad behavior should not be countenanced.

The Court should dismiss this action and require Spry to litigate this claim in *Becerra* (where she remains a party). But if the Court is not inclined to dismiss the action,

it should stay the case pending resolution of *Babbitt*, which will materially affect the issues presented here, allowing the Court and the parties to avoid wasting resources by engaging in duplicative efforts.

## II.    BACKGROUND

### A.    The *Babbitt* Action and Counsel's Promise Not to File Another FLSA Collective Action.

Over six years ago, on February 11, 2020, Andrew Davis,[1] represented by many of the same counsel representing Spry in this matter, filed an FLSA collective action against Target, now styled as *Babbitt v. Target Corp.*, 0:20-cv-00490-DWF-ECW ("*Babbitt*"), Dkt. 1 (D. Minn. Feb. 11, 2020).[2] The *Babbitt* complaint alleged that Target misclassified its ETLs as exempt employees under the FLSA. *See id.* The plaintiffs in *Babbitt* sought to represent a collective of "[a]ll persons who worked as [ETLs] for [Target] around the country at any time since three years prior to filing this Complaint." *Id.* ¶ 38.

*Babbitt* proceeded in discovery for a year and a half, during which the parties produced documents, answered interrogatories and took depositions.

On July 23, 2021, the *Babbitt* plaintiffs moved to conditionally certify a collective composed of:

---

[1] Davis was later replaced by Tammy Babbitt and William Carter as the named plaintiffs. *Babbitt*, Dkt. 48.

[2] *Babbitt* was actually the third lawsuit filed by Spry's counsel alleging the same set of claims against Target; the first case, *Locicero v. Target Corp.*, No. 16-cv-05592, was filed on September 14, 2016, in the United States District Court for the District of New Jersey, and the second case, *Jibowu v. Target Corp.*, No. 1:17-cv-03875-PKC-MMH, was filed in the United States District Court for the Eastern District of New York on June 28, 2017, and later transferred to this Court, where it was assigned No. 0:24-cv-04189-DWF-ECW.

4908-0964-7923

All current and former Executive Team Leader (ETLs) however variously titled, excluding the ETL Human Resources position, the ETL Asset Protection position, the ETL Remodel position, and the Logistics ETL position in stores that have Replenishment ETLs, who worked for Defendant in the United States at any time on or after July 20, [2018].[3]

*Babbitt*, Dkt. 85 at 1.

On March 28, 2022, the Court granted conditional certification of this collective. *Babbitt*, Dkts. 155, 158. Notice (and at least one reminder notice) accordingly was sent to more than 15,000 individuals, and more than 3,500 of them opted into the case. *See Babbitt*, Dkt. 350.

Since early 2024, the parties have engaged in substantial post-conditional certification discovery in *Babbitt*, including dozens of depositions, production of over a million pages of documents, and answers to nearly 500 interrogatories. The parties also have engaged in discovery motion practice. *Babbitt*, Dkts. 392, 394, 457. The parties recently began the second phase of discovery, which will consist of up to a little more than 100 depositions of opt-in plaintiffs and more than 300 sets of written discovery. *Babbitt*, Dkt. 363.

On August 19, 2024, the *Babbitt* plaintiffs moved to amend their complaint to add five class claims under the wage-and-hour laws of Minnesota, California, New Jersey, Ohio, and Pennsylvania. *Babbitt*, Dkt. 375 at 1. In their briefing, counsel promised the Court that, "if the Court does not permit the sought amendment, then the proposed Named Plaintiffs will be filing the proposed Amended Complaint, in materially the same form but

---

[3] By stipulation, the start date of the collective period was revised to 2018 as a result of an error in plaintiffs' moving papers. *Babbitt*, Dkt. 156 at 2.

4908-0964-7923

as a new pleading *without the FLSA allegations or the present named Plaintiffs*, as a new lawsuit in this Court." *Id.* at 2 (emphasis supplied).

On January 10, 2025, the Court denied the motion to amend, explaining that the *Babbitt* plaintiffs "would benefit from a resolution of their FLSA class claims in an expeditious as possible manner" but are not precluded "from filing a separate action asserting their *state class allegations*." *Babbitt v. Target Corp.*, 2025 WL 71586, at *8 (D. Minn. Jan. 10, 2025) (emphasis supplied).

### B. Spry Joined *Becerra* as an FLSA Party Plaintiff and the Court Dismissed the FLSA Collective Claim.

On February 10, 2025, nearly two years after joining the *Babbitt* collective, opt-in Joseph Messeck withdrew from that case. *Babbitt*, Dkt. 409. That same day, Messeck, along with other individuals, and represented by many of the same counsel as in *Babbitt*, commenced the now-captioned matter *Becerra v. Target Corp.*, 0:25-cv-00535-DWF-ECW ("*Becerra*"), Dkt. 1 (D. Minn. Feb. 10, 2025). Despite counsel's promise to the Court in *Babbitt* that any new action would include only state-law claims and "without the FLSA allegations," *Babbitt*, Dkt. 375 at 2, they did just the opposite. The complaint they filed in *Becerra* not only proposed four classes under the wage-and-hour laws of Minnesota, California, New Jersey, and Pennsylvania, but also sought to pursue an FLSA collective that substantially overlapped with the conditionally certified collective in *Babbitt*. *Becerra*, Dkt. 41, ¶¶ 52-71. Specifically, the *Becerra* plaintiffs sought to represent a collective of:

> All persons employed by Target as an Executive Team Leaders (but not as an ETL Human Resources, ETL Asset Protection, ETL Remodel, or ETL Logistics in a store with an ETL Replenishment) at any time from February 10, 2022, to the present, and who has does not have a consent to

4

join in either *Babbitt, et al., v. Target Corp.*, 20-CV-00490 DWF-ECW (D. Minn.) or *Jibowu, et al. v. Target Corp.*, 24-CV-04189 DWF-ECW (D. Minn.).

*Id.* ¶ 48.[4]

On May 2, 2025, Target filed a motion to dismiss the *Becerra* FLSA collective claim, arguing that it was improperly duplicative of the earlier-filed *Babbitt* action. *Becerra*, Dkt. 54. Target acknowledged that granting its motion would not preclude individuals who fell within the scope of the proposed collective from pursuing their FLSA claims on an *individual* basis. *See Becerra*, Dkt. 54, Dkt. 65 at 2 ("Granting Target's motion would neither preclude plaintiffs from pursuing their FLSA claims on an individual basis nor deprive those ETLs who never received notice of *Babbitt* or *Jibowu* (the original FLSA collection action filed by plaintiffs' counsel) of the opportunity to bring their own FLSA case."). Because the motion was only a partial motion to dismiss, Target also filed its answer to the first amended complaint that same day. *Becerra*, Dkt. 59.

On May 21, 2025, plaintiffs filed consent forms for Spry and David Harris to become party plaintiffs in *Becerra. Becerra*, Dkt. 61 ("Consent to Become a Party Plaintiff").

---

[4]  As previously noted, *Jibowu v. Target Corp.* was another conditionally certified collective brought by the same counsel before they filed *Babbitt*. The court in *Jibowu* refused to conditionally certify a national collective and instead limited the case to only to the specific "Target store locations within California, Illinois, New York, Ohio, Oklahoma, Pennsylvania, and Texas, at which Plaintiff Jibowu or the [then-seven] opt-in Plaintiffs worked, at any time from June 28, 2014 to the present." *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 129 (E.D.N.Y. 2020). The parties have since settled *Jibowu*.

On September 17, 2025, pursuant to a stipulation by the parties that was approved by the Court (*Becerra*, Dkt. 77), plaintiffs filed their second amended complaint, which notwithstanding Target's pending motion to dismiss retained the FLSA collective claim. *Becerra*, Dkt. 78. On October 1, 2025, Target filed its answer to the second amended complaint. *Becerra*, Dkt. 80.

On October 29, 2025, the Court granted Target's motion to dismiss the FLSA collective claim in *Becerra*, holding that it improperly overlapped with the same claim in *Babbitt* and would create confusion among potential opt-ins. *Becerra*, Dkt. 84. The Court noted that the plaintiffs' state law claims could proceed, and "Plaintiffs, or other ETLs who never received notice in *Babbitt* or *Jibowu*, are not precluded from pursuing their FLSA claims on an *individual* basis." *Id.* at 9 (emphasis supplied).

### C.    Despite Her Party Plaintiff Status in *Becerra*, Spry Initiated This Action.

On March 24, 2026, Spry filed a notice in *Becerra* purporting to "hereby withdraw[] her Consent to join this lawsuit." *Becerra*, Dkt. 105. That same day, Spry brought this action, seeking to represent a putative FLSA collective of individuals who worked in the same ETL positions covered in *Babbitt*. *See* Dkt. 1, ¶ 42. Specifically, Spry seeks to represent a collective of:

> All persons employed by Target as an Executive Team Leader ("ETL") (but not as an ETL Human Resources, ETL Asset Protection, ETL Remodel, or ETL Logistics in a store with an ETL Replenishment) at any time from March 24, 2023, to the present, and who was not a potential collective member who received the Court-authorized notice in *Babbitt, et al., v. Target Corp.*, 20-CV-00490 DWF-ECW (D. Minn.) or *Jibowu, et al. v. Target Corp.*, 24-CV-04189 DWF-ECW (D. Minn.).

6

*Id.*

## III.    ARGUMENT

### A.    The Court Should Dismiss This Action as Impermissibly Duplicative of *Becerra*.

It is well established that duplicative litigation should be avoided. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (explaining "the general principle is to avoid duplicative litigation" in federal courts). That means a plaintiff "may not pursue multiple federal suits against the same party involving the same controversy at the same time." *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.,* 259 F.3d 949, 954 (8th Cir. 2001). Dismissal is therefore appropriate where a plaintiff initiates two lawsuits to adjudicate the same claim against the same defendant.

This lawsuit must be dismissed because Spry became a party plaintiff when she joined *Becerra* to pursue her FLSA claim, and her withdrawal from that case was ineffective under Rule 41(a). She cannot simultaneously be a party plaintiff in *Becerra* and bring yet another lawsuit against Target seeking to adjudicate her same FLSA claim.

### 1.    Spry's Purported Withdrawal from *Becerra* Was Ineffective.

When she filed her consent to join *Becerra* to pursue her FLSA claim, Spry became a party plaintiff in that action. *Becerra*, Dkt. 61 ("Consent to Become a Party Plaintiff").[5] The statutory language of section 216(b) of the FLSA provides that party status is conferred upon the filing of written consent. 29 U.S.C. § 216(b) ("No employee shall be a party

---

[5] In dismissing the FLSA collective claim in *Becerra*, the Court did not preclude individuals from pursuing their FLSA claims on an individual basis. *See Becerra*, Dkt. 84 at 9. Accordingly, the dismissal of the FLSA collective claim in *Becerra* did not dismiss Spry's individual claim.

7

plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). This Court likewise has concluded that party status is conferred upon the filing of a consent form. *See Borup v. CJS Sols. Grp., LLC*, 333 F.R.D. 142, 148 (D. Minn. 2019) ("In a FLSA collective action, each opt-in member is a party plaintiff, giving them the same status in the case as the named plaintiff."); *accord Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 89 (1st Cir. 2022) ("[O]pt-in plaintiffs become parties to the proceedings when they give 'consent in writing to become such a party and such consent is filed in the court'"); *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) ("The plain language of § 216(b) supports that those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required.").

Although Spry filed a purported notice of withdrawal from *Becerra*, her withdrawal had no legal effect because it did not comply with Rule 41(a). Under Rule 41(a), after the defendant answers the complaint, the plaintiff may only be dismissed from the action only through a court order or "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii).

Target answered the operative *Becerra* complaint on October 1, 2025, *Becerra*, Dkt. 80. Spry never obtained a court order or Target's agreement to withdraw from *Becerra* before filing her purported notice of withdrawal on March 24, 2026. *See Becerra*, Dkt. 105. Accordingly, her attempt to withdraw from *Becerra* was legally ineffective and did not terminate her status as a plaintiff in *Becerra* pursuing her FLSA claim. *See, e.g.*, *Reyes v. Texas EZPAWN, L.P.,* 2006 WL 3513936, *1 (S.D. Tex. Dec. 6, 2006) ("Contrary to

8

Plaintiff's belief, simply withdrawing the consent forms of opt-in plaintiffs does not automatically dismiss their claims without an order of this Court."); *Devries v. Morgan Stanley & Co. LLC*, 2015 WL 6670109, at *3 (S.D. Fla. Oct. 30, 2015) ("Because Plaintiffs had neither the consent of the Defendants nor the approval of the Court, their two Notices of Withdrawal of Motiey and Aponte are without legal support and should be stricken.").

Because Spry is still a party plaintiff in *Becerra* with an FLSA claim, this action—asserting the same FLSA claim against the same defendant—is duplicative and should be dismissed. *Colorado River*, 424 U.S. at 817 (1976); *Joseph v. Pacesetter Personnel Serv., Inc.*, 2022 WL 2191635, at *4 (S.D. Fla. June 17, 2022) (dismissing second-filed action when "under Rule 41(a), the Joseph Plaintiffs are still party plaintiffs in *Villarino*").

During the meet and confer process on this motion, plaintiffs argued that Spry's withdrawal should not be deemed legally ineffective under Rule 41(a) because opt-in plaintiffs previously have withdrawn from the related *Babbitt* and *Jibowu* cases without strict adherence to the Rule. This argument is factually incorrect and legally meritless. Rule 41(a) provides the exclusive mechanism for voluntary dismissal after an answer is filed, requiring either a court order or agreement by the parties. *See* Fed. R. Civ. P. 41(a). Indeed, any post-answer withdrawals in *Babbitt* or *Jibowu* were made either pursuant to a Court order or with Target's agreement. *See, e.g.*, *Babbitt*, Dkt. 319 (ordering that any individual who "was misidentified as having opted into the Collective in court filings, that individual's opt-in notice will be withdrawn"), Dkt. 321 (notice of withdrawal of opt-in plaintiffs pursuant to Court's order). To be sure, Target has agreed to the withdrawal of opt-ins who fell outside the scope of the collective, untimely filed their consent to join the

9

collective, or indicated they have no intention of pursuing a claim against Target. Here, by contrast, Spry never requested or received any agreement by Target to withdraw. Instead, Spry attempted a unilateral withdrawal after Target had answered, after the Court had dismissed plaintiffs' duplicative FLSA collective claim, and without Target's agreement or Court approval. Spry then immediately filed a new lawsuit asserting another FLSA collective claim. Rule 41 exists to prevent this kind of maneuver, and plaintiffs cannot transform Target's prior, cooperative case management conduct into a license to disregard the Federal Rules and initiate duplicative litigation.

### 2.     Counsel's Pattern of Successive FLSA Collective Filings and Litigation Conduct Further Support Dismissal.

Although the putative FLSA collective alleged in this action does not overlap with *Babbitt* to the same extent as did the now-dismissed *Becerra* FLSA collective, the broader course of successive FLSA collective filings and related litigation by the same counsel further supports dismissal. In *Babbitt*, counsel represented that if the Court denied the plaintiffs' motion to amend, any newly filed action would proceed "without the FLSA allegations." *Babbitt*, Dkt. 375 at 1. The Court relied on that representation in allowing the FLSA claim in *Babbitt* to proceed while permitting the plaintiffs to pursue separate state-law claims, not a duplicative FLSA claim. *Babbitt*, 2025 WL 71586, at *8 (holding that plaintiffs were not precluded "from filing a separate action asserting their *state class allegations*" (emphasis supplied)).

Despite their promise to the Court, there has been a pattern of successive FLSA collective claims filed by the same counsel as in *Babbitt*. First, opt-in Messeck (represented

10

by many of the same counsel as in *Babbitt*) withdrew from the conditionally certified *Babbitt* collective after being part of that collective for nearly two years, just to pursue the FLSA collective claim in *Becerra*. *See Babbitt*, Dkt. 409; *Becerra*, Dkt. 1. This Court then dismissed that claim with prejudice as improperly overlapping with *Babbitt*. *Becerra*, Dkt. 84. The Court, in that same order, made clear that "ETLs who never received notice in *Babbitt* or *Jibowu,* are not precluded from pursuing their FLSA claims on an *individual* basis." *Id.* at 9 (emphasis supplied).

Next, Spry (represented by the same counsel as in *Babbitt*) had previously filed a consent to join form in *Becerra*, and should have pursued her individual FLSA claim in that case. But instead, she did precisely what her counsel represented to the *Babbitt* Court it would not do: Spry purportedly "withdrew" from *Becerra* and filed yet another FLSA *collective* action. *Becerra*, Dkt. 105; *Spry*, Dkt. 1. Even if Spry seeks to reach a somewhat different group of employees, this action is premised on the same alleged nationwide policy, based on the same ETL positions, and seeks to proceed through the same collective mechanism already being litigated in *Babbitt*. *Compare Spry*, Dkt. 1 ¶ 42 (defining the putative collective) *with Babbitt*, Dkt. 85 at 1 (defining the conditionally certified collective).

Permitting this action to proceed would encourage the repeated withdrawal of *Babbitt* opt-ins to file successive collective actions indefinitely. But the purpose of the FLSA's collective mechanism is to avoid multiplicity of suits—not encourage serial filings. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989) (holding that FLSA's collective action mechanism "serves the legitimate goal of avoiding a multiplicity

11

of duplicative suits *and setting cutoff dates to expedite disposition of the action*") (emphasis supplied). Rather than focusing on advancing the *Babbitt* litigation, counsel have wasted time and resources with fragmented proceedings, forced repeated motion practice on the same issues, and reneged on prior representations made to the Court. The Court should say enough is enough. It should not allow yet another iteration of the same litigation strategy and instead dismiss this improperly initiated action, leaving Spry to continue litigating her individual FLSA claim in *Becerra*.

### B.      In the Alternative, the Court Should Stay This Action.

Should the Court disagree, then at minimum it should stay the claim pending resolution of *Babbitt*. Granting a stay is within the sound discretion of the Court, and "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Jefferson Pilot Life Ins. Co. v. Marietta Campbell Ins. Grp., LLC*, 2008 WL 11349715, at *6 (D. Minn. Apr. 10, 2008) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2nd Cir. 2000))), *objections overruled*, 2008 WL 3582751 (D. Minn. Aug. 12, 2008). "In deciding whether to stay a case, courts weigh the competing interests of the parties, and the hardship or inequity a party may suffer if a stay is granted." *Lindell v. United States*, 2022 WL 17068785, at *1 (D. Minn. Nov. 17, 2022) (internal quotation marks omitted); *see also Frable v. Synchrony Bank*, 215 F. Supp. 3d 818, 821 (D. Minn. 2016) ("Relevant factors include the conservation of judicial resources and the parties'

12

resources, maintaining control of the court's docket, providing for the just determination of cases, and hardship or inequity to the party opposing the stay.").

*Babbitt* would largely inform the issues in *Spry* and avoid the waste of judicial resources in litigating substantially similar legal issues in two separate cases at the same time. While *Spry* and *Babbitt* address different time periods, they concern the same misclassification claim as applied to the same roles. *Compare Spry*, Dkt. 1 ¶ 42 (defining the putative collective) *with Babbitt*, Dkt. 85 at 1 (defining the conditionally certified collective).[6] Allowing this case to proceed in tandem with *Babbitt* would not only expose Target to duplicative discovery burdens, but it would also disrupt the orderly progression of the already advanced *Babbitt* litigation by unnecessarily diverting party resources to a duplicative action. Indeed, each additional action does not merely add new claims—it reintroduces the same issues in a new procedural posture, multiplying costs and complexity without advancing resolution of any claim. That is inconsistent with this Court's Order denying plaintiffs' motion to amend their *Babbitt* complaint: "Plaintiffs—including those who are not from the proposed class states ...—would benefit from a resolution of their FLSA class claims in an expeditious as possible manner." *Babbitt*, 2025 WL 71586, at *8.

---

[6] Plaintiffs' counsel previously joined with Target in representing to the Court and the Eastern District of New York that a stay was warranted in *Jibowu* not only because the *Jibowu* and *Babbitt* actions were nearly identical, but also because there was "significant overlap" between the *Babbitt* and *Jibowu* collectives in terms of their claims, even though they were not entirely co-extensive. *See Jibowu*, 24-cv-04189, Dkt. 180 at 1 ("The claims and defenses in *Babbitt* and *Jibowu* are virtually identical."); *see also id.* at 2 ("The proposed stay promotes efficiency, avoids duplication of effort (particularly with respect to discovery), and minimizes the risk of divergent rulings on similar issues.").

4908-0964-7923

Spry also would not be prejudiced by a stay. A stay only requires her to await adjudication of *Babbitt*. If Spry does not want to wait for the adjudication of her individual FLSA claim, she may proceed on that claim in *Becerra*, from which she never properly withdrew. *See* section III.A., *supra.* Accordingly, Spry faces no meaningful prejudice from awaiting resolution of *Babbitt.*

Under these circumstances, the balance of equities weighs decisively in favor of a stay, which is necessary to conserve judicial resources, avoid duplicative litigation, and ensure the orderly and efficient resolution of the FLSA issues already before the Court in *Babbitt*.

## IV.    CONCLUSION

For these reasons, Target asks this Court to grant its motion to dismiss this action or, in the alternative, to stay this matter pending the resolution of *Babbitt*.

14

4908-0964-7923

NILAN JOHNSON LEWIS PA

Dated: June 1, 2026

By: *s/ Joseph G. Schmitt*

Joseph G. Schmitt (Reg. No. 231447)
Chris Amundsen (Reg. No. 0388981)
Courtney E. Ward-Reichard (Reg. No. 0232324)
Courtney L. Burks (Reg. No. 0399487)
250 Marquette Avenue South, Suite 800
Minneapolis, Minnesota 55401
Telephone: (612) 305-7500
Facsimile: 612) 305-7501
jschmitt@nilanjohnson.com
camundsen@nilanjohnson.com
cward@nilanjohnson.com
cburks@nilanjohnson.com

JEFFREY D. WOHL (*pro hac vice forthcoming*)
398 Primrose Road, Suite 225
Burlingame, CA 94010
Phone: 650-437-7042
Fax: 612-305-7501
jwohl@nilanjohnson.com

Sara B. Tomezsko (*pro hac vice forthcoming*)
Daniel S. Richards (*pro hac vice forthcoming*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
saratomezsko@paulhastings.com
danrichards@paulhastings.com

ATTORNEYS FOR DEFENDANT
TARGET CORPORATION

15

4908-0964-7923