**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CHRISTIE SPRY and MICHAEL ARILOTTA, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. 0:26-cv-2027-DWF-ECW |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF SPRY'S CLAIM AND STRIKE PLAINTIFFS' COLLECTIVE CLAIM IN THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STAY ACTION PENDING *BABBITT v. TARGET CORP.***

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 3

A. The *Babbitt* Action and Counsel's Unkept Promise Not to File Another FLSA Collective Action. .......... 3

B. Spry Joined *Becerra* as an FLSA Party Plaintiff and the Court Dismissed the FLSA Collective Claim. .......... 5

C. Despite Her Party Plaintiff Status in *Becerra*, Spry Brought This Action. .......... 7

D. In Response to Target's Motion to Dismiss, Spry Amended Her Complaint to Add Arilotta as a Second Plaintiff and Collective Representative. .......... 7

III. THE COURT SHOULD DISMISS SPRY'S CLAIMS AND ARILLOTTA'S COLLECTIVE CLAIMS OR, AT MIMIMUM, STAY the ACTION PENDING *BABBITT* .......... 8

E. Spry's Claims Should Be Dismissed Because She Remains a Party Plaintiff in *Becerra*. .......... 8

F. Although Arilotta May Pursue an Individual FLSA Claim in This Action, the Collective Allegations Should Be Dismissed or Stricken. .......... 12

G. In the Alternative, the Court Should Stay This Action. .......... 15

H. The Court Should Stay Target's Deadline to Respond to Arilotta's Individual FLSA Claim Pending Disposition of This Motion. .......... 17

IV. CONCLUSION .......... 18

## I. INTRODUCTION

This lawsuit is the latest chapter in a series of overlapping Fair Labor Standards Act ("FLSA") collective actions filed by the same plaintiffs' counsel challenging Target's classification of Executive Team Leaders ("ETLs"). For years, the parties have been litigating that claim in *Babbitt v. Target Corp.*, where a conditionally certified nationwide collective includes more than 3,500 opt-in plaintiffs and where extensive merits discovery remains ongoing. Rather than focusing their efforts on obtaining a resolution of that already-pending claim, plaintiffs' counsel have repeatedly launched new proceedings premised on the same alleged nationwide ETL misclassification theory, requiring the parties and the Court to address overlapping issues in successive lawsuits.

The Court has already addressed one such attempt. In *Becerra v. Target Corp.*, plaintiffs' counsel pursued another nationwide FLSA collective after previously representing in *Babbitt* that any newly filed action would proceed *without* FLSA allegations. This Court dismissed the *Becerra* collective claim, concluding that it substantially overlapped with *Babbitt* and would create confusion among potential opt-in plaintiffs. This Court also observed that individuals who had not received notice in *Babbitt* or in the even earlier-filed, substantially similar case of *Jibowu v. Target Corp.* remained free to pursue their FLSA claims on an individual basis. And a number of plaintiffs are in fact pursuing individual FLSA claims in *Becerra*.

Plaintiffs' counsel next sought to use one of those plaintiffs, Christie Spry, in yet another effort to assert duplicative claims. Counsel purported to dismiss Spry's claims in *Becerra* (without even attempting to comply with Rule 41, Federal Rules of Civil

Procedure) and have Spry bring a new national collective action. Target immediately moved to dismiss, citing controlling case law precluding a plaintiff from asserting duplicative FLSA claims in multiple lawsuits.

Plaintiffs' counsel now seek yet another bite at the apple. Apparently acknowledging the fundamental flaws identified in Target's motion to dismiss Spry's claim, plaintiffs' counsel obtained an extended period to find yet another plaintiff, Michael Arilotta, and now have amended their complaint to add him while retaining the same collective claim. The amended complaint continues counsel's tactic of litigating the same collective theory through successive pleadings and representatives, notwithstanding the Court's prior rulings and ongoing proceedings already addressing that theory.

Spry's claim still should be dismissed because she remains a party plaintiff in *Becerra*. Arilotta may pursue his own individual FLSA claim, just as the individual plaintiffs are doing in *Becerra*. However, the collective allegations should be stricken. Permitting another iteration of the same nationwide ETL collective would undermine principles of judicial economy, create the very inefficiencies recognized by the Court in *Becerra*, and encourage the continued proliferation of overlapping collective proceedings rather than the orderly resolution of a claim already being litigated.

If the Court is not inclined to dismiss the collective allegations, at minimum it should stay the action pending resolution of *Babbitt*, which will materially inform the issues presented here, allowing the Court and the parties to avoid wasting resources by engaging in duplicative efforts.

## II. BACKGROUND

### A. The *Babbitt* Action and Counsel's Unkept Promise Not to File Another FLSA Collective Action.

Over six years ago, on February 11, 2020, Andrew Davis,[1] represented by many of the same counsel representing plaintiffs in this matter, filed an FLSA collective action against Target, now styled as *Babbitt v. Target Corp.*, 0:20-cv-00490-DWF-ECW ("*Babbitt*"), Dkt. 1 (D. Minn. Feb. 11, 2020).[2] The *Babbitt* complaint alleged that Target misclassified its ETLs as exempt under the FLSA. *See id.* The plaintiffs in *Babbitt* sought to represent a collective of "[a]ll persons who worked as [ETLs] for [Target] around the country at any time since three years prior to filing this Complaint." *Id.*, ¶ 38.

*Babbitt* proceeded in discovery for a year and a half, during which the parties produced documents, answered interrogatories and took depositions. Then, on July 23, 2021, the *Babbitt* plaintiffs moved to certify conditionally this collective:

> All current and former Executive Team Leader (ETLs) however variously titled, excluding the ETL Human Resources position, the ETL Asset Protection position, the ETL Remodel position, and the Logistics ETL position in stores that have Replenishment ETLs, who worked for Defendant in the United States at any time on or after July 20, [2018].[3]

---

[1] Davis was later replaced by Tammy Babbitt and William Carter as the named plaintiffs. *Babbitt*, Dkt. 48.

[2] *Babbitt* actually was the third lawsuit filed by Spry's counsel alleging the same set of claims against Target. The first case, *Locicero v. Target Corp.*, No. 16-cv-05592, was filed on September 14, 2016, in the United States District Court for the District of New Jersey, and the second case, *Jibowu v. Target Corp.*, No. 1:17-cv-03875-PKC-MMH, was filed in the United States District Court for the Eastern District of New York on June 28, 2017, and later transferred to this Court, where it was designated No. 0:24-cv-04189-DWF-ECW.

[3] By stipulation, the start date of the collective period was revised to 2018 as a result of an error in plaintiffs' moving papers. *Babbitt*, Dkt. 156 at 2.

*Babbitt*, Dkt. 85 at 1.

On March 28, 2022, the Court granted conditional certification. *Babbitt*, Dkts. 155, 158. Notice (and at least one reminder notice) accordingly was sent to more than 15,000 individuals, and more than 3,500 of them opted into the case. *See id.*, Dkt. 350.

Since early 2024, the parties have engaged in substantial post-conditional certification discovery in *Babbitt*, including dozens of depositions, production of over a million pages of documents, and answers to nearly 500 interrogatories. The parties also have engaged in discovery motion practice. *Babbitt*, Dkts. 392, 394, 457. The parties recently began the second phase of discovery, which will consist of more than 100 depositions of opt-in plaintiffs and more than 300 sets of written discovery. *Id.*, Dkt. 363.

On August 19, 2024, the *Babbitt* plaintiffs moved to amend their complaint to add five class claims under the wage-and-hour laws of Minnesota, California, New Jersey, Ohio, and Pennsylvania. *Babbitt*, Dkt. 375 at 1. In their briefing, counsel promised the Court that, "if the Court does not permit the sought amendment, then the proposed Named Plaintiffs will be filing the proposed Amended Complaint, in materially the same form but as a new pleading *without the FLSA allegations or the present named Plaintiffs*, as a new lawsuit in this Court." *Id.* at 2 (emphasis supplied).

On January 10, 2025, the Court denied the motion to amend, explaining that the *Babbitt* plaintiffs "would benefit from a resolution of their FLSA class claims in an expeditious as possible manner" but are not precluded "from filing a separate action asserting their *state class allegations*." *Babbitt v. Target Corp.*, 2025 WL 71586, at *8 (D. Minn. Jan. 10, 2025) (emphasis supplied).

### B. Spry Joined *Becerra* as an FLSA Party Plaintiff and the Court Dismissed the FLSA Collective Claim.

On February 10, 2025, nearly two years after joining the *Babbitt* collective, opt-in Joseph Messeck withdrew from that case. *Babbitt*, Dkt. 409. That same day, Messeck, along with other individuals, and represented by many of the same counsel as in *Babbitt*, commenced the now-captioned matter *Becerra v. Target Corp.*, 0:25-cv-00535-DWF-ECW ("*Becerra*"), Dkt. 1 (D. Minn. Feb. 10, 2025). Despite counsel's promise to the Court in *Babbitt* that any new action would include only state-law claims and "without the FLSA allegations," *id.*, Dkt. 375 at 2, they did just the opposite. The complaint they filed in *Becerra* not only proposed four classes under the wage-and-hour laws of Minnesota, California, New Jersey, and Pennsylvania (later expanded to include Illinois and New York), but also sought to pursue an FLSA collective that substantially overlapped with the conditionally certified collective in *Babbitt*. *Becerra*, Dkt. 41, ¶¶ 52-71. Specifically, the *Becerra* plaintiffs sought to represent a collective of:

> All persons employed by Target as an Executive Team Leaders (but not as an ETL Human Resources, ETL Asset Protection, ETL Remodel, or ETL Logistics in a store with an ETL Replenishment) at any time from February 10, 2022, to the present, and who has does not have a consent to join in either *Babbitt, et al., v. Target Corp.*, 20-CV-00490 DWF-ECW (D. Minn.) or *Jibowu, et al. v. Target Corp.*, 24-CV-04189 DWF-ECW (D. Minn.).

*Id.* ¶ 48.[4]

---

[4] As previously noted, *Jibowu v. Target Corp.* was another conditionally certified collective brought by the same counsel before they filed *Babbitt*. The court in *Jibowu* refused to conditionally certify a national collective and instead limited the case to only the specific "Target store locations within California, Illinois, New York, Ohio, Oklahoma, Pennsylvania, and Texas, at which Plaintiff Jibowu or the [then-seven] opt-in Plaintiffs

On May 2, 2025, Target filed a motion to dismiss the *Becerra* FLSA collective claim, arguing that it was improperly duplicative of the earlier-filed *Babbitt* action and that equitable considerations warranted dismissal because plaintiffs' counsel had broken their promise that any newly filed complaint would not include FLSA allegations. *Becerra*, Dkt. 54. Target acknowledged that granting its motion would not preclude individuals who fell within the scope of the proposed collective from pursuing their FLSA claims on an *individual* basis. *See id.*, Dkt. 54, Dkt. 65 at 2 ("Granting Target's motion would neither preclude plaintiffs from pursuing their FLSA claims on an individual basis nor deprive those ETLs who never received notice of *Babbitt* or *Jibowu* (the original FLSA collection action filed by plaintiffs' counsel) of the opportunity to bring their own FLSA case."). Target also filed its answer to the first amended complaint that same day. *Id.*, Dkt. 59.

On May 21, 2025, plaintiffs filed consent forms for Spry and David Harris to become party plaintiffs in *Becerra*. *Becerra*, Dkt. 61.

On September 17, 2025, plaintiffs filed their second amended complaint, which notwithstanding Target's pending motion to dismiss retained the FLSA collective claim. *Becerra*, Dkt. 78. On October 1, 2025, Target filed its answer to the second amended complaint. *Id.*, Dkt. 80.

On October 29, 2025, the Court granted Target's motion to dismiss the FLSA collective claim in *Becerra*, holding that it improperly overlapped with the same claim in *Babbitt* and would create confusion among potential opt-ins. *Becerra*, Dkt. 84. The Court

---

worked, at any time from June 28, 2014 to the present." *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 129 (E.D.N.Y. 2020). The parties have since settled *Jibowu*.

noted that the plaintiffs' state law claims could proceed, and "Plaintiffs, or other ETLs who never received notice in *Babbitt* or *Jibowu*, are not precluded from pursuing their FLSA claims on an *individual* basis." *Id.* at 9 (emphasis supplied).

### C. Despite Her Party Plaintiff Status in *Becerra*, Spry Brought This Action.

On March 24, 2026, Spry filed a notice in *Becerra* purporting to "hereby withdraw[] her Consent to join this lawsuit." *Becerra*, Dkt. 105. That same day, Spry brought this action, seeking to represent a putative FLSA collective of individuals who worked in the same ETL positions covered in *Babbitt*. *See Spry*, Dkt. 1, ¶ 42. Specifically, Spry sought to represent a collective of:

> All persons employed by Target as an Executive Team Leader ("ETL") (but not as an ETL Human Resources, ETL Asset Protection, ETL Remodel, or ETL Logistics in a store with an ETL Replenishment) at any time from March 24, 2023, to the present, and who was not a potential collective member who received the Court-authorized notice in *Babbitt, et al., v. Target Corp.*, 20-CV-00490 DWF-ECW (D. Minn.) or *Jibowu, et al. v. Target Corp.*, 24-CV-04189 DWF-ECW (D. Minn.).

*Id.*

### D. In Response to Target's Motion to Dismiss, Spry Amended Her Complaint to Add Arilotta as a Second Plaintiff and Collective Representative.

On June 1, 2026, Target moved to dismiss this action or, alternatively, stay it. *Spry*, Dkts. 21-25. Among other things, Target demonstrated that Spry remained a party plaintiff in *Becerra* and that this lawsuit represented another attempt to pursue an FLSA collective action despite counsel's prior representations to the Court that they would not file a new FLSA collective. *Id.*, Dkt. 23 at 7-12.

After obtaining a substantial extension of time to respond to Target's dismissal motion, plaintiffs filed an amended complaint on July 22, 2026. *Spry*, Dkts. 31 and 36. The amendment did not remove the challenged collective allegations. Instead, Spry added Arilotta as a second plaintiff and collective representative. According to the amended complaint, Arilotta began working as an ETL in July 2025 and remains employed by Target. *Id.*, Dkt. 36, Am. Compl. ¶ 9. The amended pleading otherwise leaves unchanged the nationwide FLSA collective allegations and seeks to pursue a collective on behalf of the same ETL positions at issue in *Babbitt* and *Becerra*. *Id.*, ¶ 43.

## III. THE COURT SHOULD DISMISS SPRY'S CLAIMS AND ARILLOTTA'S COLLECTIVE CLAIMS OR, AT MIMIMUM, STAY THE ACTION PENDING *BABBITT*

### E. Spry's Claims Should Be Dismissed Because She Remains a Party Plaintiff in *Becerra*.

It is well established that duplicative litigation should be avoided. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (explaining "the general principle is to avoid duplicative litigation" in federal courts). That means a plaintiff "may not pursue multiple federal suits against the same party involving the same controversy at the same time." *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 954 (8th Cir. 2001). Dismissal is therefore appropriate where a plaintiff initiates two lawsuits to adjudicate the same claim against the same defendant.

Spry's claim should be dismissed because she became a party plaintiff when she joined *Becerra* to pursue her FLSA claim, and her withdrawal from that case was ineffective under Rule 41(a), Federal Rules of Civil Procedure. She therefore cannot

simultaneously be a party plaintiff in *Becerra* and bring yet another lawsuit against Target seeking to adjudicate a second identical FLSA claim.

When she filed her consent to join *Becerra* to pursue her FLSA claim, Spry became a party plaintiff in that action. *Becerra*, Dkt. 61 ("Consent to Become a Party Plaintiff").[5] Section 216(b) of the FLSA provides that party status is conferred upon the filing of written consent. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). This Court likewise has concluded that party status is conferred upon the filing of a consent form. *See Babbitt*, Dkt. 538 at 3 (holding that "[e]ach opt-in Plaintiff has full-party status" and is subject to Rule 41(b)); *see also Borup v. CJS Sols. Grp., LLC*, 333 F.R.D. 142, 148 (D. Minn. 2019) ("In a FLSA collective action, each opt-in member is a party plaintiff, giving them the same status in the case as the named plaintiff."); *accord Waters v. Day & Zimmermann NPS, Inc*., 23 F.4th 84, 89 (1st Cir. 2022) ("[O]pt-in plaintiffs become parties to the proceedings when they give 'consent in writing to become such a party and such consent is filed in the court'"); *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) ("The plain language of § 216(b) supports that those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required.").

---

[5] In dismissing the FLSA collective claim in *Becerra*, the Court did not preclude individuals from pursuing their FLSA claims on an individual basis. *See Becerra*, Dkt. 84 at 9. Accordingly, the dismissal of the FLSA collective claim in *Becerra* did not dismiss Spry's individual claim. She, and other plaintiffs, continue to pursue individual FLSA claims in *Becerra*.

Although Spry filed a purported notice of withdrawal from *Becerra*, her withdrawal had no legal effect because it did not comply with Rule 41(a). Under Rule 41(a), after the defendant answers the complaint, the plaintiff may only be dismissed from the action only through a court order or "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii).

Target answered the operative *Becerra* complaint on October 1, 2025, *Becerra*, Dkt. 80. Spry never requested or obtained a court order or Target's agreement to withdraw from *Becerra* before filing her purported notice of withdrawal on March 24, 2026. *See Becerra*, Dkt. 105. Accordingly, her attempt to withdraw from *Becerra* was legally ineffective and did not terminate her status as a plaintiff in *Becerra* pursuing her FLSA claim. *See, e.g.*, *Reyes v. Texas EZPAWN, L.P.*, 2006 WL 3513936, *1 (S.D. Tex. Dec. 6, 2006) ("Contrary to Plaintiff's belief, simply withdrawing the consent forms of opt-in plaintiffs does not automatically dismiss their claims without an order of this Court."); *Devries v. Morgan Stanley & Co. LLC*, 2015 WL 6670109, at *3 (S.D. Fla. Oct. 30, 2015) ("Because Plaintiffs had neither the consent of the Defendants nor the approval of the Court, their two Notices of Withdrawal of Motiey and Aponte are without legal support and should be stricken.").

Because Spry is still a party plaintiff in *Becerra* with an FLSA claim, this action—asserting the same FLSA claim against the same defendant—is duplicative and should be dismissed. *Colorado River,* 424 U.S. at 817 (1976); *Joseph v. Pacesetter Personnel Serv., Inc.*, 2022 WL 2191635, at *4 (S.D. Fla. June 17, 2022) (dismissing second-filed action when "under Rule 41(a), the Joseph Plaintiffs are still party plaintiffs in *Villarino*"); *see also Copello v. Boehringer Ingelheim Pharms. Inc.*, 812 F. Supp. 2d 886, 890 (N.D. Ill.

2011) (dismissing plaintiff's FLSA claim for reasons of "wise judicial administration" when plaintiff had already opted in to earlier FLSA action against same defendant).

During the meet and confer process on this motion, plaintiffs argued that Spry's withdrawal should not be deemed legally ineffective under Rule 41(a) because opt-in plaintiffs previously have withdrawn from the related *Babbitt* and *Jibowu* cases without strict adherence to the rule. This argument is factually incorrect and legally meritless. Rule 41(a) provides the exclusive mechanism for voluntary dismissal after an answer is filed, requiring either a court order or agreement by the parties. *See* Fed. R. Civ. P. 41(a). Indeed, any post-answer withdrawals in *Babbitt* or *Jibowu* were made either pursuant to a Court order or with Target's agreement. *See, e.g.*, *Babbitt*, Dkt. 319 (ordering that any individual who "was misidentified as having opted into the Collective in court filings, that individual's opt-in notice will be withdrawn"), Dkt. 321 (notice of withdrawal of opt-in plaintiffs pursuant to Court's order). To be sure, Target has agreed to the withdrawal of opt-ins who fell outside the scope of the collective, untimely filed their consent to join the collective or indicated they have no intention of pursuing a claim against Target. Here, by contrast, Spry never requested or received any agreement by Target to withdraw. Instead, Spry attempted a unilateral withdrawal after Target had answered, after the Court had dismissed plaintiffs' duplicative FLSA collective claim, and without Target's agreement or Court approval. Spry then immediately filed a new lawsuit asserting another FLSA collective claim. Rule 41 exists to prevent this kind of maneuver, and Spry cannot transform Target's prior, cooperative case management conduct into a license to disregard the Federal Rules and initiate duplicative litigation.

Finally, the addition of Arilotta does not alter this analysis. Regardless of whether Arilotta may pursue an individual FLSA claim, Spry's claim remains duplicative because she is already pursuing the same FLSA claim against the same defendant in *Becerra*.

Accordingly, Spry's claim should be dismissed in its entirety. Spry may continue to pursue her individual FLSA claim in *Becerra*, but she may not simultaneously litigate the same FLSA claim against Target in a second lawsuit.

### F. Although Arilotta May Pursue an Individual FLSA Claim in This Action, the Collective Allegations Should Be Dismissed or Stricken.

Rule 12(f), Federal Rules of Civil Procedure, permits a court to strike from a pleading any redundant, immaterial or impertinent matter. Although motions to strike are generally disfavored, district courts possess broad discretion to strike allegations and to manage their dockets in furtherance of judicial economy and the orderly administration of related litigation. *See* Fed. R. Civ. P. 12(f); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (explaining there is "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); *Lunsford v. United States*, 570 F.2d 221, 227 n.11 (8th Cir. 1977) (recognizing courts' inherent authority to strike materials on its own initiative); *cf. Munoz v. Arizona State University*, 80 F.R.D. 670, 672 (D. Ariz. 1978) (granting motion to strike, in part, based on equitable concerns affecting proper use of representative litigation mechanisms, including, in that case, "similarity of pleadings, proposed settlements and other conduct by plaintiffs' counsel in the previously cited cases compared with the instant case").

Here, the addition of Arilotta as a plaintiff does not justify allowing another nationwide ETL collective action to proceed. To be clear, Target does not contend that Arilotta is barred from pursuing an individual FLSA claim. To the contrary, when dismissing the FLSA collective allegations in *Becerra*, this Court expressly held, “ETLs who never received notice in *Babbitt* or *Jibowu*, are not precluded from pursing their FLSA claims on an individual basis.” *Becerra*, Dkt. 84 at 9. But the fact that Arilotta may pursue an individual FLSA claim does not provide a basis for resurrecting yet another nationwide collective action.

Equitable considerations unique to this case warrant dismissal or striking of the collective allegations. In *Babbitt*, plaintiffs’ counsel represented to the Court that if the proposed amendment to add state-law classes were denied, any newly filed action would proceed “without the FLSA allegations.” *Babbitt*, Dkt. 375 at 2. The Court subsequently denied the amendment while explaining that plaintiffs remained free to pursue separate state-law claims. *Babbitt*, 2025 WL 71586, at *8. Notwithstanding those representations, counsel filed *Becerra* asserting another nationwide FLSA collective. When Target moved to dismiss that collective claim, it argued not only that the claim improperly overlapped with *Babbitt*, but also that dismissal was warranted because counsel’s serial filing of successive FLSA collectives was inconsistent with their prior representations to the Court and needlessly multiplied related proceedings. *Becerra*, Dkt. 54. Although the Court ultimately granted Target’s motion based on the overlap between *Becerra* and *Babbitt*, it did not say it was overruling the equitable concerns raised by Target. *See Becerra*, Dkt. 84 at 5. Those concerns are even more pronounced now because plaintiffs have responded to

Target's challenge to Spry's original complaint not by abandoning the collective allegations, but instead by doubling down on them by adding *a second* plaintiff and collective representative. The amendment did not alter the allegations about nationwide exempt misclassification, the ETL positions at issue or the collective theory underlying the case. It simply added a second collective representative and continued to pursue a collective theory that already was advanced in *Jibowu*, *Babbitt* and *Becerra*. This continuing cycle of representative litigation raising overlapping issues is precisely the type of inefficiency and duplication that prompted Target's equitable objections in *Becerra* and warrants striking the collective allegations here.

Permitting this action to proceed would encourage the repeated withdrawal of *Babbitt* opt-ins to file successive collective actions indefinitely. But the purpose of the FLSA's collective mechanism is to ***avoid*** multiplicity of suits—not ***encourage*** serial filings. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989) (holding that FLSA's collective action mechanism "serves the legitimate goal of avoiding a multiplicity of duplicative suits *and setting cutoff dates to expedite disposition of the action*") (emphasis supplied). Rather than focusing on advancing *Babbitt*, plaintiffs' counsel have wasted time and resources with fragmented proceedings, forced repeated motion practice on the same issues, and reneged on prior representations made to the Court. The Court should say enough is enough. It should not allow yet another iteration of the same litigation strategy and instead strike the collective allegations and permit Arilotta to continue litigating his individual FLSA claim, as the Court allowed in its *Becerra* order (Dkt. 84 at 9).

**G. In the Alternative, the Court Should Stay This Action.**

Should the Court decline to dismiss or strike the collective allegations, it should at minimum stay this action pending resolution of *Babbitt*. Granting a stay is within the sound discretion of the Court and "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Jefferson Pilot Life Ins. Co. v. Marietta Campbell Ins. Grp., LLC*, 2008 WL 11349715, at *6 (D. Minn. Apr. 10, 2008) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2nd Cir. 2000))), *objections overruled*, 2008 WL 3582751 (D. Minn. Aug. 12, 2008). "In deciding whether to stay a case, courts weigh the competing interests of the parties, and the hardship or inequity a party may suffer if a stay is granted." *Lindell v. United States*, 2022 WL 17068785, at *1 (D. Minn. Nov. 17, 2022) (internal quotation marks omitted); *see also Frable v. Synchrony Bank*, 215 F. Supp. 3d 818, 821 (D. Minn. 2016) ("Relevant factors include the conservation of judicial resources and the parties' resources, maintaining control of the court's docket, providing for the just determination of cases, and hardship or inequity to the party opposing the stay.").

Whether advanced by Spry or Arilotta, the collective allegations in this case concern the same alleged ETL misclassification policy that is already the subject of the extensive, long-running litigation in *Babbitt*. Although the amended complaint in this matter alleges a different employment period than the *Babbitt* collective, the proposed collective remains

centered on the same ETL positions, the same exemption theory, and the same alleged nationwide policies and practices. *Compare Spry*, Dkt. 36 ¶ 43 (defining putative collective) *with Babbitt*, Dkt. 85 at 1 (defining conditionally certified collective).[6] Resolution of *Babbitt* would largely (if not entirely) inform the issues in *Spry* and avoid the waste of judicial resources in simultaneously litigating identical legal issues in two separate, complex cases.

Moreover, *Babbitt* is far more advanced than this case. The parties already have engaged in years of discovery, including extensive written discovery, document production, depositions, and discovery motion practice. Allowing this case to proceed in tandem with *Babbitt* would not only expose Target to duplicative discovery burdens, it would disrupt the orderly progression of the already advanced *Babbitt* litigation by unnecessarily diverting party resources to repeating what the parties have already done. Indeed, each additional action does not merely add a new claim—it reintroduces the same issues in a new procedural posture, multiplying costs and complexity without advancing resolution of any claim. That is inconsistent with this Court's order denying the plaintiffs' motion to amend the complaint in *Babbitt*: "Plaintiffs—including those who are not from

---

[6] Plaintiffs' counsel previously joined with Target in representing to this Court and the Eastern District of New York that a stay was warranted in *Jibowu* not only because the *Jibowu* and *Babbitt* actions were nearly identical, but also because there was "significant overlap" between the *Babbitt* and *Jibowu* collectives: "[t]he claims and defenses in *Babbitt* and *Jibowu* are virtually identical." *See Jibowu*, 24-cv-04189, Dkt. 180 at 1; *see also id.* at 2 ("The proposed stay promotes efficiency, avoids duplication of effort (particularly with respect to discovery), and minimizes the risk of divergent rulings on similar issues.").

the proposed class states ... would benefit from a resolution of their FLSA class claims in an expeditious as possible manner." *Babbitt*, 2025 WL 71586, at *8.

Neither Spry nor Arilotta would be prejudiced by a stay. A stay would only require Spry to await adjudication of *Babbitt*. If Spry does not want to wait, she may proceed with her individual FLSA claim in *Becerra*, from which she never properly withdrew. *See* section III.A., *supra.* Accordingly, Spry faces no meaningful prejudice from awaiting resolution of *Babbitt.*

As for Arilotta, as this Court recognized in *Becerra*, employees who did not receive notice in *Babbitt* or *Jibowu* remain free to immediately pursue his or her individual FLSA claims. Thus, if Arilotta wanted to pursue his individual claim, the Court could carve out that claim from the stay.

### H. The Court Should Stay Target's Deadline to Respond to Arilotta's Individual FLSA Claim Pending Disposition of This Motion.

While this Court determines whether to dismiss Spry's claim, strike the FLSA collective claim and/or stay this matter in its entirety pending *Babbitt*, it should stay Target's deadline to respond to Arilotta's individual FLSA claim until 14 days after a ruling on this motion. Courts, including this one, regularly suspend a defendant's response deadline while a partial motion to dismiss is pending. *See, e.g.*, *Corning Inc. v. Wilson Wolf Mfg. Corp.*, 492 F. Supp. 3d 840, 864 (D. Minn. 2020) (granting stay because "judicial efficiency is best served by a single answer, rather than piecemeal partial answers.*"); LG2, LLC v. Am. Dairy Queen Corp.*, 2023 WL 171792, at *6 (D. Minn. Jan. 12, 2023) (granting request for stay to answer allegations not subject to partial dismissal motion because

"requiring [defendant] to answer before the resolution of its motion to dismiss would result in piecemeal litigation and disserve judicial efficiency").

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss Spry's claim, strike the collective allegations and permit Arilotta to proceed only on an individual basis. Alternatively, the Court should stay the action pending resolution of *Babbitt*, or stay all proceedings other than Arilotta's individual FLSA claim if he wishes to pursue it at this time and stay the deadline for responding to that claim.

NILAN JOHNSON LEWIS PA

Dated: August 19, 2026

By: *s/ Joseph G. Schmitt*

Joseph G. Schmitt (Reg. No. 231447)
Chris Amundsen (Reg. No. 0388981)
Courtney E. Ward-Reichard (Reg. No. 0232324)
Courtney L. Burks (Reg. No. 0399487)
250 Marquette Avenue South, Suite 800
Minneapolis, Minnesota 55401
Telephone: (612) 305-7500
Facsimile: 612) 305-7501
jschmitt@nilanjohnson.com
camundsen@nilanjohnson.com
cward@nilanjohnson.com
cburks@nilanjohnson.com

JEFFREY D. WOHL (*pro hac vice*)
398 Primrose Road, Suite 225
Burlingame, CA 94010
Phone: 650-437-7042
Fax: 612-305-7501
jwohl@nilanjohnson.com

Sara B. Tomezsko (*pro hac vice*)
Daniel S. Richards (*pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
saratomezsko@paulhastings.com
danrichards@paulhastings.com

ATTORNEYS FOR DEFENDANT
TARGET CORPORATION