**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CHRISTIE SPRY and MICHAEL ARILOTTA, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. 0:26-cv-02027-DWF-ECW |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF SPRY'S CLAIMS AND STRIKE PLAINTIFFS' COLLECTIVE CLAIM IN THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STAY ACTION PENDING *BABBITT v. TARGET CORP.***

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND FACTS AND PROCEDURAL HISTORY .......... 3

III. ARGUMENT .......... 7

A. The Ability of FLSA Litigants to Proceed in a Collective Manner to Permit the Efficient Adjudication of Their Claims is Well-Established and Beyond Debate. .......... 8

B. Regardless, This Matter Vindicates the Rights of a Materially Different Collective, so the FLSA Collective Allegations Should Not Be Dismissed or Stricken. .......... 9

C. Spry is No Longer a Plaintiff in *Becerra* and Hence Can Proceed with Her FLSA Claim in this Case. .......... 13

i. Spry Did Not Need a Joint Stipulation or Court Order to Withdraw from Becerra Based on Her Dismissal. .......... 13

ii. Regardless, Spry's Withdrawal from Becerra Conforms with FLSA Practice in this Circuit, as Target Has Implicitly Conceded. .......... 17

D. This Matter Should Not Be Stayed. .......... 21

E. Plaintiffs Do Not Oppose Extending Target's Deadline to Respond to Arilotta's Individual FLSA Claim. .......... 23

IV. CONCLUSION .......... 24

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Sch. Bd. of Hanover Cty.*,
No. 3:05CV310, 2008 U.S. Dist. LEXIS 96296 (E.D. Va. Nov. 26, 2008)........... 17

*Allen v. Suntrek Tours, Inc.*,
No. CV-12-5165, 2013 U.S. Dist. LEXIS 42814 (C.D. Cal. Mar. 25, 2013) ........ 22

*Alvarez v. City of Chicago*,
605 F.3d 445 (7th Cir. 2010) ........................................................................ 15, 18

*Babbitt v. Target Corp.,*
No. 0:20-cv-00490-DWF-ECW (D. Minn.) ..................................................*passim*

*Becerra v. Target Corp.*,
No. 0:25-cv-00535-DWF-ECW (D. Minn.) ..................................................*passim*

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) ................................................................ 15, 16, 18

*Coleman v. Target Corp.*,
No. 6:12-cv-01315 (M.D. Fl.) ........................................................................... 4

*Colorado River Water Conservation Dist. v. U.S.*,
424 U.S. 800 (1976) ....................................................................................... 10, 21

*Curtis v. Citibank, N.A.,*
226 F.3d 133 (2nd Cir. 2000) .............................................................................. 10

*Deutsch v. My Pillow, Inc.*,
No. 20-cv-00318 (SRN/ECW), 2023 U.S. Dist. LEXIS 73209 (D. Minn. Apr. 27, 2023)........................................................................................................... 17

*Devries v. Morgan Stanley & Co. LLC*,
No. 12-81223-CIV, 2015 U.S. Dist. LEXIS 149643 (S.D. Fla. Oct. 30, 2015)..... 20

*Duke v. Harvest Hospitalities, Inc.*,
No. 2:20-CV-00865-CCW, 2021 U.S. Dist. LEXIS 177091 (W.D. Pa. Sep. 17, 2021)........................................................................................................... 17

*Elliott v. Schlumberger Tech. Corp.*,
No. 3:13-cv-79, 2017 U.S. Dist. LEXIS 229796 (D.N.D. Jan. 6, 2017)................ 17

*Gander Mt. Co. v. Cabela's, Inc.*,

No. 06-2857 (PJS/RLE), 2007 U.S. Dist. LEXIS 108402 (D. Minn. Nov. 9, 2007) ..... 10

*Genesis HealthCare Corp. v. Symczyk*,
569 U.S. 66 (2013) ..... 15

*Gifford v.Target Corp.*,
No. 10-cv-1194 (D. Minn.) ..... 4

*Gomez v. Glob. Precision Sys., LLC*,
636 F. Supp. 3d 746 (W.D. Tex. 2022) ..... 18

*Greene v. H&R Block E. Enters.*,
727 F. Supp. 2d 1363 (S.D. Fla. 2010) ..... 14

*Halle v. West Penn Allegheny Health Sys.*,
842 F.3d 215 (3d Cir. 2016) ..... 14, 15, 16, 18, 19

*Haworth v. New Prime*,
448 F. Supp. 3d 1060 (W.D. Mo. 2020) ..... 21, 22

*Hoffmann-LaRoche v. Sperling,*
493 U.S. 165 (1989) ..... 8, 10

*In re Term Commodities Cotton Futures Litig.*,
2013 U.S. Dist. LEXIS 65797 (S.D.N.Y. 2013) ..... 22

*Jibowu v. Target Corp.*,
No. 1:17-cv-03875-PKC-MMH (E.D.N.Y.) ..... *passim*

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ..... 21

*Locicero v. Target Corp.*,
Case No. 3:16-cv-5592-PGS-TJB (D.N.J.) ..... 3, 4, 8

*Lunsford v. United States*,
570 F.2d 221(8th Cir. 1977) ..... 10

*Mickles v. Country Club Inc.*,
887 F.3d 1270 (11th Cir. 2018) ..... 14, 18

*Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*,
259 F.3d 949 (8th Cir. 2001) ..... 13

*Morales v. Farmland Foods, Inc.*,

No. 8:08CV504, 2011 U.S. Dist. LEXIS 151983 (D. Neb. Dec. 15, 2011) .......... 18

*Nerland v. Caribou Coffee Co.*,
564 F. Supp. 2d 1010 (D. Minn. 2007) ........................................................ 12, 18

*Norman v. Target Corp.*,
No. 5:25-cv-3245 (C.D. Cal.) ........................................................................ 4

*Ocean S. v. L.A. Cnty.*,
2024 U.S. Dist. LEXIS 158702 (C.D. Cal. Jun. 11, 2024) ................................... 18

*Patton v. Stolle Mach. Co. LLC*,
Civil Action No. 14-cv-03392-WJM-KLM, 2015 U.S. Dist. LEXIS 45986 (D. Colo. Apr. 7, 2015) ................................................................................ 21

*Provencher v. Bimbo Foods Bakeries Distribution LLC*,
175 F.4th 180 (2d Cir. 2026) ....................................................................... 10

*Quay v. Monarch Healthcare Mgmt. LLC*,
No. 21-1796 (JRT/TNL), 2023 U.S. Dist. LEXIS 134751 (D. Minn. Aug. 3, 2023) ................................................................................................ 8

*Reyes v. Texas EZPAWN, L.P.*,
No. V-03-128, 2006 WL 3513936 (S.D. Tex. Dec. 6, 2006) ................................ 20

*Rosario v. First Student Mgmt. LLC*,
247 F. Supp. 3d 560 (E.D. Pa. 2017) .............................................................. 18

*Rouse v. Target Corp.*,
No. 15-cv-00048 (S.D. Tex.) ......................................................................... 4

*Stanbury Law Firm, P.A. v. IRS*,
221 F.3d 1059 (8th Cir. 2000) ...................................................................... 10

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ...................................................................... 10

*Stroud v. Target Corp.*,
No. 10-1583 ADM/LIB, 2011 U.S. Dist. LEXIS 175644 (D. Minn. Sep. 1, 2011) 8

*Templemeyer v. Target Corp.*,
No. 17-cv-2070 (W.D. Ark.) ......................................................................... 4

*Warner v. Little John Transp. Servs.*,
2019 U.S. Dist. LEXIS 85253 (W.D. Ark. May 21, 2019) .................................... 18

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457, 468 (2001) .......................................................................... 17

*Yan Ming Wang v. Jessy Corp.*,
No. 17-5069 (JRT/HB), 2019 U.S. Dist. LEXIS 131077 (D. Minn. Aug. 6, 2019) 8

**<u>Statutes</u>**

29 U.S.C. § 216(b) .......................................................................... 18

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ........................................ *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) .......................................................................... 18

Fed. R. Civ. P. 12(f) .......................................................................... 10

Fed. R. Civ. P. 41(a) .......................................................................... 17, 20

# I. INTRODUCTION

Plaintiffs Christie Spry ("Spry") and Michael Arilotta ("Arilotta") (collectively, "Plaintiffs"), by and through their undersigned counsel, submit the following memorandum of law in opposition to the Motion to Dismiss Plaintiff Spry's Claim and Strike Plaintiffs' Collective Claim in the Amended Complaint or, in the Alternative, to Stay Action Pending *Babbitt v. Target Corp.* (ECF Nos. 42–46) (the "Motion to Dismiss" or "MTD") filed by Target Corporation ("Target" or "Defendant") in this case.

In its Motion to Dismiss, Target distorts this Court's order from *Becerra v. Target Corp.*, Case No. 0:25-cv-00535-DWF-ECW ("*Becerra*"), Dkt. 84 at 9 (D. Minn.), to suggest that *all* Executive Team Leaders ("ETLs") who never received notice in *Babbitt* or *Jibowu* have lost their right to bring a collective action against Target *in perpetuity*—even when those ETLs are subjected to ongoing violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). In Target's view, employees who never received notice of previous FLSA litigation like *Babbitt* or were not even *employed* by Target during the time frame at issue in that case—like Plaintiff Arilotta, here—can lose their right to pursue collective action remedies seemingly without any notice. This completely unjust result—penalizing any and all other employees of a company because a prior FLSA lawsuit they could not have even joined might have included some FLSA claims based on events that happened years prior to their employment—defies the fundamental and accepted opt-in structure of the FLSA and cannot be supported. Because Target's other procedural arguments on dismissal also fall flat, this Court should deny Target's Motion to Dismiss.

While admitting in its pre-amendment Motion to Dismiss that "the putative FLSA collective alleged in this action does not overlap with *Babbitt* to the same extent as did the…*Becerra* FLSA collective," Dkt. 23 at 10, Target now contends that the Court must strike the collective allegations from this case because failing to do so will allow "*Babbitt* opt-ins to file successive collective actions indefinitely." MTD at 14. But Arilotta never was, *or even could have been*, an opt-in in *Babbitt*, and Spry is no longer even an opt-in in *Becerra*, as discussed below. All of the individuals who never received notice of the *Babbitt* or *Jibowu* cases—a group which largely encompasses new ETLs hired after the *Babbitt* opt-in period closed in June 2023, like Arilotta—are not duplicating *Babbitt* by bringing new collective claims. Rather, Spry and Arilotta would represent an entirely new collective distinct from that dismissed in *Becerra*. These ETLs are simply maintaining their right to seek collective relief under the FLSA when subjected to ongoing violations that extend throughout the duration of the *Babbitt* case, as here. While Target might wish not to face litigants filing "indefinite" FLSA collective actions, the nature of the FLSA and its opt-in structure *must* permit that, when an employer engages in ongoing misconduct, one set of FLSA litigants cannot be prejudiced in their ability to combine in a collective action just because some other litigants already did so. Or, not to be flippant, Target has another simple solution: begin paying ETLs the overtime to which they are entitled under the FLSA.

Target's contention that Spry's claims should be dismissed because she remains a Plaintiff in *Becerra* disregards the Court's dismissal of the FLSA collective claims from the *Becerra* complaint, which accordingly dismissed Spry's opt-in claims without

prejudice. *See Becerra,* Dkt. 84. Even if a withdrawal was necessary, Spry's withdrawal from *Becerra* was proper. While Target contends that Spry's withdrawal from the *Becerra* case was "ineffective," MTD at 8, this argument ignores the practice of courts in this Circuit and around the country allowing unilateral withdrawals—a practice that reflects the legal sufficiency of Spry's withdrawal. Further, Target itself has not once objected to the unilateral withdrawal of opt-in plaintiffs post-answer in the *Jibowu*, *Babbitt*, and *Becerra* litigation—in no small part because such withdrawals are legally sufficient and consistent with this widely-accepted practice in FLSA litigation.

To allow this new group of ETLs to vindicate their statutory rights under the FLSA, this Court should recognize Plaintiffs' right to seek collective relief on behalf of themselves and similar ETLs not protected against Target's ongoing misconduct by the *Babbitt* collective action. Thus, Target's Motion to Dismiss should be denied.

## II. BACKGROUND FACTS AND PROCEDURAL HISTORY

The instant matter arises out of Target's continued noncompliance with the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, by classifying ETLs as exempt executives. *See Spry*, ECF No. 1. As this Court is well aware, this alleged misconduct is not new: counsel for Spry has also participated in litigation alleging that Target engaged in this kind of misclassification going back as early as September 2013 – nearly 13 years ago. *See Locicero v. Target Corp.*, Case No. 3:16-cv-5592-PGS-TJB ("*Locicero*"), Dkt. 1 (D.N.J.) (alleging misclassification on behalf of an FLSA collective extending back as far as "three years from the date of the filing of this Complaint"). And, moreover, as previously put

before the Court over the last two decades, Target has time and again and again been sued by litigants over ETL misclassification.[1]

Since the *Locicero* case was filed, counsel for Spry has filed subsequent FLSA collective actions on behalf of Target ETLs regarding the same basic misclassification, just for different temporal groups of ETLs. *See Jibowu v. Target Corp.*, Case No. 1:17-cv-03875-PKC-MMH ("*Jibowu*"), Dkt. 1 (E.D.N.Y.) (alleging misclassification of ETL collective starting in June 2014); *Babbitt v. Target Corp.*, 0:20-cv-00490-DWF-ECW ("*Babbitt*"), Dkt. 1 (D. Minn.) (same, but collective starting in February 2017); *Becerra v. Target Corp.*, Case No. 0:25-cv-00535-DWF-ECW ("*Becerra*"), Dkt. 1 (D. Minn.) (same, but collective starting in February 2022).

While *Locicero* resolved prior to conditional certification, *Jibowu* and *Babbitt* were each conditionally certified. On September 30, 2020, the Eastern District of New York certified an FLSA collective in *Jibowu* consisting of:

> [C]urrent and former Food ETLs, Sales Floor ETLs, Softlines ETLs, Hardlines ETLs, Guest Experience ETLs, Replenishment ETLs, and Logistics ETLs in stores that do not have Replenishment ETLS, employed by Defendants at the Target store locations within California, Illinois, New York, Ohio, Oklahoma, Pennsylvania, and Texas, at which Plaintiff Jibowu or the opt-in Plaintiffs worked, at any time from June 28, 2014 to the present.

---

[1] In addition to the *Locicero*, *Jibowu* and *Babbitt* matters, among others that Plaintiffs' counsel are aware of include: *Gifford v.Target Corp.*, No. 10-cv-1194 (D. Minn.); *Coleman v. Target Corp.*, No. 6:12-cv-01315 (M.D. Fl.); *Rouse v. Target Corp.*, No. 15-cv-00048 (S.D. Tex.); *Templemeyer v. Target Corp.*, No. 17-cv-2070 (W.D. Ark.); *Norman v. Target Corp.*, No. 5:25-cv-3245 (C.D. Cal.).

*Jibowu*, Dkt. 129. Notice was sent to the putative collective members on January 25, 2021, and the notice period closed on March 26, 2021. *Jibowu*, Dkt. 144. *Jibowu* settled in February 2026. *Jibowu*, Dkt. 302.

This Court conditionally certified an FLSA collective in *Babbitt* on March 28, 2022, which involved substantially similar ETL roles except on a nationwide scale and from "any time on or after July 20, 2021." *Babbitt*, Dkt. 155. Notice was issued on or about March 30, 2023, and the cut-off date for submitting consent-to-join forms was June 13, 2023. *See* Ex. A, Schwermer-Sween Decl. ¶ 4. Since the conclusion of the consent period, the *Babbitt* case has moved into the discovery stage, where it remains pending.

On August 19, 2024, Plaintiffs in *Babbitt* moved to amend their complaint to include class allegations under various state wage-and-hour laws, Dkt. 375, but the Court denied that motion in January 2025. *See Babbitt v. Target Corp.*, No. 20-cv-490 (DWF/ECW), 2025 U.S. Dist. LEXIS 4950 (D. Minn. Jan. 10, 2025). In order to continue vindicating the rights of ETLs while not causing delay to the long-pending FLSA claims in *Babbitt*, counsel for Plaintiffs filed a separate complaint that included the state wage-and-hour claims and a renewed FLSA collective claim that would only cover ETLs "from February 10, 2022, to the present…who [do not] have a consent to join in either *Babbitt*…or *Jibowu*…." *Becerra*, Dkt. 1. The complaint included named plaintiff Joseph Messeck, who previously opted into the *Babbitt* case but withdrew his consent via a notice filed by Plaintiffs' counsel on February 10, 2025, *Babbitt*, Dkt. 409 – not a court order or jointly signed stipulation that would typically be required post-answer.

Shortly after the *Becerra* matter was filed, Target moved to dismiss the FLSA collective claims. Dkt. 54. Of note, Target raised no concerns about the effectiveness of Mr. Messeck's withdrawal from the *Babbitt* case. *Id.* Instead, Target argued that the second-filed *Becerra* FLSA claims were duplicative of the collective claims in *Babbitt* and thus should be dismissed or stayed under the first-filed rule. *Id.* at 10–12. In particular, Target contended that although the *Becerra* collective was limited to those who did not consent to join *Babbitt* or *Jibowu*, conditional certification of the *Becerra* collective would lead to thousands of ETLs that received notice in *Babbitt* receiving a second notice based on substantively similar claims. *Id.*

Prior to a ruling on the *Becerra* Motion to Dismiss, Spry signed and filed a consent-to-join form opting into the case. *Becerra*, Dkt. 61. Despite subsequent amendments to the complaint, Dkt. 78, Spry never chose to become a named plaintiff in *Becerra*.

On October 29, 2025, this Court granted Target's Motion to Dismiss the FLSA collective action claims from the complaint in *Becerra*. Dkt. 84. The Court's reasoning hinged primarily on the substantial overlap between the *Becerra* collective and the *Babbitt* collective, highlighting that the *Becerra* collective would consist of approximately 10,000 ETLs, but 7,000 of those ETLs would already have received notice in *Babbitt*. *Id.* at 6. The Court expressly noted, however, that "plaintiffs could have avoided much of the substantial overlap by defining the collective to include only those individuals who did not receive notice in *Babbitt*." *Id.* at 7 n.2. As a result, the Court dismissed the Plaintiffs' FLSA collective claim with prejudice and stated that "Plaintiffs, or other ETLs who never

received notice in *Babbitt* or *Jibowu*, are not precluded from pursuing their FLSA claims on an individual basis." *Id.* at 9.

To avoid any doubt about her status in the *Becerra* case following the Court's dismissal of the FLSA collective claim, counsel for Plaintiffs filed a notice indicating Spry's withdrawal of her consent to join the collective. *Becerra*, Dkt. 105. To pursue FLSA remedies on behalf of herself and similarly situated ETLs, Spry filed the instant case in March 2026. *Spry*, Dkt. 1. The FLSA collective identified in this case is limited to those who served in an ETL position "from March 24, 2023, to the present, and who [were] not a potential collective member who received the Court-authorized notice in *Babbitt, et al., v. Target Corp.*, 20-CV-00490 DWF-ECW (D. Minn.) or *Jibowu, et al. v. Target Corp.*, 24-CV-04189 DWF-ECW (D. Minn.)." *Id.* at 9. Target initially moved to dismiss the Complaint in this matter on June 1, 2026, *Spry*, Dkt. 21–25, focusing largely on the status of Spry as a former plaintiff in the *Becerra* litigation. On July 22, 2026, the operative Amended Complaint including Arilotta as a named plaintiff was filed in this case. *Spry*, Dkt. 36. Target then filed the instant Motion to Dismiss on August 19, 2026.

## III. ARGUMENT

With the addition of Mr. Arilotta to this case, the issue originally posed by Target with its original Motion to Dismiss has dramatically changed. The issue is no longer simply whether Ms. Spry withdrew from the *Babbitt* case, but whether other Target ETLs —who number in the hundreds, if not thousands—and who *could never have joined Babbitt* are foreclosed from proceeding in another putative collective action simply because some other ETLs (those in *Babbitt*) earlier brought FLSA claims in a

conditionally certified collective. That is the paramount issue now presented. And, as summarized above, such a result would be utterly lawless and unjust. The issue as to Ms. Spry remains, however, and is also addressed below.

### A. The Ability of FLSA Litigants to Proceed in a Collective Manner to Permit the Efficient Adjudication of Their Claims is Well-Established and Beyond Debate.

As recognized by the Supreme Court's seminal decision in *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989), inherent in FLSA jurisprudence is the recognition that FLSA actions can proceed on an opt-in collective basis to "lower [the] individual costs to vindicate rights by the pooling of resources"—a recognition repeated time and again by this Court and within this Circuit. *See Quay v. Monarch Healthcare Mgmt. LLC*, No. 21-1796 (JRT/TNL), 2023 U.S. Dist. LEXIS 134751, at *6–7 (D. Minn. Aug. 3, 2023); *Yan Ming Wang v. Jessy Corp.*, No. 17-5069 (JRT/HB), 2019 U.S. Dist. LEXIS 131077, at *3 (D. Minn. Aug. 6, 2019); *Stroud v. Target Corp.*, No. 10-1583 ADM/LIB, 2011 U.S. Dist. LEXIS 175644, at *10 (D. Minn. Sep. 1, 2011). This is the very underpinning of the FLSA's collective remedy, for—as Target well knows and as this Court can certainly understand given Target's dogged defense of the *Locicero*, *Jibowu*, and *Babbitt* cases—proceeding with a misclassification claim against a mega-corporation like Target is a daunting prospect for any individual litigant.

Yet, Target's position on the present motion is that, because some employees previously brought FLSA claims for the same alleged FLSA violative behavior, any other employees who might have such FLSA claims simply cannot proceed in this core manner for protection of *their* FLSA rights. They are, in Target's world, just out of luck—despite

having literally never even been able to join the earlier *Babbitt* collective (for which the opt-in period closed over three years ago, on June 13, 2023). The patent unfairness of this approach is made plain by considering the case of Arilotta, an ETL who started at Target in July 2025—more than *two years* after the opt-in period in *Babbitt* closed—yet experienced the same exact misclassification as his predecessors in *Babbitt*. To deny Arilotta his statutory right to collective relief is, respectfully, unjust and wrong. There is no jurisprudential support for treating FLSA litigants in such a two-tiered approach whereby later employees are so disadvantageously foreclosed and prevented from proceeding on a collective basis. That is the heart of the matter, and that alone justifies denial of Target's position.

### B. Regardless, This Matter Vindicates the Rights of a Materially Different Collective, so the FLSA Collective Allegations Should Not Be Dismissed or Stricken.

Nor, of course, even within the confines of how Target wishes to make its argument, can it succeed. While the claims of the litigants in *Babbitt* and those who might join the putative collective in this case are legally the same, they represent two entirely different groups of individuals. The question of overlap and whether earlier cases might foreclose later cases necessarily addresses the rights of *people*, not just the claims asserted—at least where the second group of people are not within the first group and their claims are not being adjudicated within the first case. Here, there is *no* overlap between the individuals in the instant putative collective and those in the *Babbitt* collective. Indeed, Target itself conceded in the previous version of this motion that the collective in this case has far less overlap with the *Babbitt* collective compared to that

alleged in *Becerra*. Spry, Dkt. 23 at 10. Accordingly, Target's motion to strike the collective allegations on duplication grounds must be denied.

As Target appears to recognize, "striking a party's pleadings is an extreme measure, and, as a result…'motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (citing *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)). While federal courts are afforded a degree of discretion in managing their dockets, dismissal of a claim on duplication grounds is improper where the dismissed claim affects a materially distinct group of individuals or claims compared to previous litigation. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1025 (9th Cir. 2011) (finding abuse of discretion where the trial court dismissed a distinct, narrower class for purportedly being duplicative of prior litigation based on a broader class); *see also Gander Mt. Co. v. Cabela's, Inc.*, No. 06-2857 (PJS/RLE), 2007 U.S. Dist. LEXIS 108402, at *13–15 (D. Minn. Nov. 9, 2007) (citing favorably *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2nd Cir. 2000), for the proposition that a lawsuit based on "events arising after the filing of the complaint that formed the basis of the first lawsuit" is not duplicative of prior litigation, making *Colorado River* abstention inappropriate).

Given the opt-in structure of FLSA collective litigation, only employees who receive notice and opt into a collective action before the consent to join deadline can avail themselves of the efficiencies of collective litigation under the FLSA. However, if the employer defendant continues to commit the same violation of the FLSA long after the opt-in deadline, those who did not opt into the original FLSA lawsuit would still be eligible

for relief, even though they would not be able to join the earlier-filed collective. *See Provencher v. Bimbo Foods Bakeries Distribution LLC*, 175 F.4th 180, 188–89 (2d Cir. 2026) (noting that the opt-in structure of FLSA litigation results in a "mosaic of individual claims" that may include subsequent claims by "potential plaintiffs who do not opt in").

Unlike the collective alleged and dismissed in *Becerra*, the collective in this case would have no overlap with the individuals who received notice and joined the collective in *Babbitt*. In the first instance, the *Spry* collective only covers ETLs employed by Target going back to March 24, 2023— a date only *six days* in advance of the notice in *Babbitt*, *see* Ex. A, Schwermer-Sween Decl. ¶ 4 (indicating that notice in *Babbitt* was sent out on March 30, 2023)—and, further, anyone who received *Babbitt* notice is expressly barred from the putative collective definition for this case.[2]

The *Spry* collective only includes individuals who were never included in the notice of the *Babbitt* or *Jibowu* suits, which prevents confusing or duplicative notices from being sent out in *Spry* should the collective be conditionally certified—a core concern raised by the Court in its *Becerra* dismissal order. Dkt. 84 at 6–7 (noting that framing the collective in *Becerra* as excluding individuals who previously filed a consent to join in *Babbitt* or *Jibowu* would still result in significant overlap that would "surely cause confusion"). Indeed, this approach aligns with the Court's own recommendation in its *Becerra* opinion.

[2] While there may be six days of overlap between the *Babbitt* and *Spry* collectives, that temporal overlap is *de minimis* and also accounts for the role of Target in interfering with participation of ETLs in *Babbitt* or similar FLSA misclassification cases. *See* Ex. B, Spry Decl. ¶¶ 4–6, 9–11, 13, 15–16.

*See id.* at 7 n.2 ("[P]laintiffs could have avoided much of the substantial overlap by defining the collective to include only those individuals who did not receive notice of *Babbitt*.").

Ironically, Target contends that dismissing this case and forcing Plaintiffs to proceed individually would be the only way of avoiding a "multiplicity of duplicative suits." MTD at 14 (citing *Hoffmann-La Roche Inc.*, 493 U.S. at 172). But denying Plaintiffs collective relief would have the opposite effect, forcing similarly situated ETLs not protected by *Babbitt* to file their claims individually, which could lead to an even greater number of FLSA suits with duplicative legal inquiries and disparate legal outcomes. *See also Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1026 (D. Minn. 2007) ("[A] requirement that each plaintiff prove his or her claim of misclassification individually would waste more judicial time and resources than trying plaintiffs' cases individually would preserve.").

Permitting a collective of this nature is particularly important to counteract the efforts of Target to limit notice and participation in *Babbitt* or similar ETL misclassification cases. *See* Ex. B, Spry Decl. ¶¶ 4–6, 9–11, 13, 15–16. Plaintiffs such as Spry were effectively denied the economic benefits of collective litigation in no small part because of Target's interference tactics. This Court should not credit Target's cries of prejudice[3] at the expense of those employees' FLSA rights, and, accordingly, Target's motion to strike the collective allegations in this case should be denied.

---

[3] Target repeatedly invokes Plaintiffs' "promise" to the Court in its *Babbitt* Memorandum of Law in Support of Motion for Leave to File an Amended Complaint that, should the Plaintiffs' motion be denied, "the proposed Named Plaintiffs [would]

(continued...)

### C. Spry is No Longer a Plaintiff in *Becerra* and Hence Can Proceed with Her FLSA Claim in this Case.

Target contends that Spry should not be permitted to prosecute this action because she is a party plaintiff in the *Becerra* matter and plaintiffs "may not pursue multiple federal suits against the same party involving the same controversy at the same time." *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 954 (8th Cir. 2001). However, Spry is no longer a plaintiff in the *Becerra* matter both because the FLSA collective claims were dismissed in that lawsuit and her withdrawal properly removed her from the case. Accordingly, the duplicative litigation doctrine does not apply and Spry's claims cannot be dismissed on that basis.

#### *i. Spry Did Not Need a Joint Stipulation or Court Order to Withdraw from Becerra Based on Her Dismissal.*

In the first instance, the duplicative litigation doctrine does not apply because Spry's claims—which were contingent on an FLSA collective claim surviving the pleadings stage—were dismissed without prejudice in *Becerra* when Judge Frank struck the FLSA collective action claims from that complaint. *Becerra*, Dkt. 84.

---

fil[e] the proposed Amended Complaint, in materially the same form but as a new pleading without the FLSA allegations or the present named Plaintiffs, as a new lawsuit in this Court." *Babbitt*, Dkt. 375 at 2. This statement simply does not support the equitable arguments that Target puts forward. The point of this statement was never to make the bizarre "promise" to the Court that Plaintiffs' counsel will cease filing any collective claims against Target in perpetuity—a promise that Plaintiffs' counsel cannot make, yet Target seems to suggest—but rather to drive home the point already spelled out in the very next sentence of that same Memorandum: "Either way, these [class action] claims will be litigated." *Id.* This was merely a statement of the potential consequences for denying Plaintiffs' pending motion, not a broad "promise" to the Court or Target that Plaintiffs' counsel will stop representing ETLs with viable claims on a collective basis.

Spry opted into the *Becerra* case on May 21, 2025, Dkt. 61, in part because she never received notice of the *Babbitt* case yet wished to pursue a collective action remedy under the FLSA. *See* Ex. B, Spry Decl. ¶¶ 2, 8, 12–16. She is not a named plaintiff in *Becerra* and never has been. Spry filed her consent to join the *Becerra* case as an opt-in plaintiff while a motion to dismiss the FLSA collective claim was still pending and, as this Court knows, that motion to dismiss resulted in Plaintiffs' FLSA collective action claim being dismissed with prejudice on the basis of the first-filed rule. *Becerra*, Dkt. 84.[4] Given the dismissal of the FLSA collective claim from the *Becerra* complaint, Spry's FLSA claim—as an opt-in rather than a named plaintiff—was dismissed without prejudice, removing her from the case. *See Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 215, 230 (3d Cir. 2016) (noting that dismissal of a collective action claim on the pleadings results in dismissal without prejudice).

It is widely accepted – and simply ignored by Target – that if conditional or final certification is denied in an FLSA case, only *named* plaintiffs are permitted to continue on to trial of their individual FLSA claims, while opt-in plaintiffs' claims are dismissed without prejudice. *See Mickles v. Country Club Inc.*, 887 F.3d 1270, 1280 (11th Cir.

---

[4] Note that while the FLSA collective claims dismissed in *Becerra* were dismissed with prejudice, the Court's order did not reach the actual merits of Spry's FLSA claims and instead focused only on procedural grounds, rendering *res judicata* inapplicable here. *See Greene v. H&R Block E. Enters.*, 727 F. Supp. 2d 1363, 1368 (S.D. Fla. 2010) (noting that dismissal of a duplicative FLSA lawsuit did not constitute judgment on the merits and, accordingly, had no res judicata effect). *Res judicata* likewise would not preclude Spry's FLSA collective claims in this case because it seeks to vindicate the rights of a materially distinct collective. *See infra*, Section III.B.

2018) ("Generally, when conditional certification of a collective action is denied, existing opt-in plaintiffs are dismissed from the lawsuit without prejudice and the matter proceeds on the *named plaintiff's* individual claims.") (emphasis added); *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018) (noting that when conditional certification is denied "if opt-in plaintiffs have already joined, they will be dismissed without prejudice to the merits of their individual FLSA claims, and the original plaintiff will be left to litigate alone"); *Halle*, 842 F.3d 215, 226 ("If a collective action is decertified at the final stage…the court will decertify the class, dismiss the opt-in plaintiffs without prejudice, and permit the *named plaintiffs* to proceed to trial.") (emphasis added); *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010) ("When a collective action is decertified, it reverts to one or more individual actions on behalf of the *named plaintiffs*.") (emphasis added).[5]

While opt-in plaintiffs may lose their right to proceed in the named plaintiff's particular FLSA collective action, they still retain all their rights under the FLSA, including the right to initiate or join a new collective action against their employer—no less one impacting a different collective. *See Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 77 (2013) ("While settlement may have the collateral effect of foreclosing unjoined claimants from having their rights vindicated in *respondent's* suit, such putative

[5] To find that opt-in plaintiffs continue on an individual basis in the same FLSA lawsuit after conditional or final certification is denied or decertification is granted would seemingly defeat the purpose of the certification or decertification process in the first place—an absurd result surely not contemplated by the FLSA's opt-in structure.

plaintiffs remain free to vindicate their rights in their own suits. They are no less able to have their claims settled or adjudicated following respondent's suit than if her suit had never been filed at all.") (emphasis supplied); *Halle*, 842 F.3d at 229–30 (3d Cir. 2016) (citing *Genesis Healthcare*, 569 U.S. at 77) ("The opt-in plaintiffs retained their own substantive FLSA claims and remain free to *file* such claims and pursue final judgments on the merits.") (emphasis added); *Campbell*, 903 F.3d 1090, 1105 (9th Cir. 2018) ("A decertification order disposes *only* of the right to proceed collectively *as the collective was defined in the complaint…*") (emphasis added).

While the dismissal order in *Becerra* noted that "Plaintiffs, or other ETLs who never received notice in *Babbitt* or *Jibowu*, are not precluded from pursuing their FLSA claims on an individual basis," this does not mean that all such ETLs may *only* proceed individually. Rather, the Court's order merely reinforces the principle articulated in the various authorities above: that once FLSA collective claims are dismissed from a case, the named plaintiffs proceed individually and opt-in plaintiffs are no longer represented by the named plaintiffs nor counsel for the collective in that case. Indeed, it would be inconsistent with *Genesis HealthCare* and its progeny to find that opt-in plaintiffs lose their right to proceed collectively when an FLSA collective claim is dismissed at the pleadings stage. To hold otherwise would impose an unjustified burden on opt-in plaintiffs who were "mere passive observers" to the case. *Halle*, 842 F.3d at 230. At very least, to wipe away the opt-in's statutory right to participate in a collective against their employer *entirely* should be something expressly stated in a court order, not implied from the mere statement that such individuals are "*not precluded* from pursuing their FLSA claims on an individual

basis." *Becerra*, ECF No. 84 (emphasis added). *See also Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (applying the interpretive principle that drafters generally do not "hide elephants in mouseholes").

#### ***ii. Regardless, Spry's Withdrawal from Becerra is Legally Sufficient and Conforms with FLSA Practice in this Circuit, as Target Has Implicitly Conceded.***

Even if a withdrawal were required for Spry in *Becerra* after her dismissal, it is far from a settled question whether FLSA opt-in plaintiffs are even required to comply with Rule 41(a) when seeking to withdraw their consent to join a case prior to final certification of a collective. *See Duke v. Harvest Hospitalities, Inc.*, No. 2:20-CV-00865-CCW, 2021 U.S. Dist. LEXIS 177091, at *5 n.4 (W.D. Pa. Sep. 17, 2021) (noting that "[s]ome courts have allowed the unopposed withdrawal of an opt-in plaintiff's consent" and compiling cases); *Adams v. Sch. Bd. of Hanover Cty.*, Civil Action No. 3:05CV310, 2008 U.S. Dist. LEXIS 96296, at *58 (E.D. Va. Nov. 26, 2008) (noting that prior to certification of an FLSA collective action "the Court sees no bar against these Plaintiffs choosing to withdraw their opt-in status"). Indeed, District Courts in this Circuit, including this Court, have repeatedly permitted opt-in plaintiffs in FLSA cases to withdraw their consents unilaterally without strict compliance with Rule 41(a). *See Deutsch v. My Pillow, Inc.*, No. 20-cv-00318 (SRN/ECW), 2023 U.S. Dist. LEXIS 73209, at *3 (D. Minn. Apr. 27, 2023) (citing multiple voluntary withdrawals of opt-ins by notice without court approval or sign-off by opposing counsel); *Elliott v. Schlumberger Tech. Corp.*, No. 3:13-cv-79, 2017 U.S. Dist. LEXIS 229796, at *3

(D.N.D. Jan. 6, 2017) (same); *Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2011 U.S. Dist. LEXIS 151983, at *6 (D. Neb. Dec. 15, 2011) (same).

Just as Target's motion overlooked the distinction between named and opt-in plaintiffs with respect to dismissal, so too does it conflate these distinct parties with respect to withdrawal. While it is true that 29 U.S.C. § 216(b) refers only to "party plaintiff[s]," "there is a fundamental difference under the FLSA between a 'named plaintiff' and an 'opt-in' plaintiff." *Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 565 (E.D. Pa. 2017); *see also Gomez v. Glob. Precision Sys., LLC*, 636 F. Supp. 3d 746, 754 (W.D. Tex. 2022) (citing *Rosario*, 247 F. Supp. 3d at 566); *Warner v. Little John Transp. Servs.*, 2019 U.S. Dist. LEXIS 85253, *2–6 (W.D. Ark. May 21, 2019) (noting how, prior to conditional certification, the court looks to the claims of "named plaintiffs"). As stated above, opt-in plaintiffs are subject to dismissal without prejudice should conditional or final certification be denied, while named plaintiffs would maintain their FLSA claims individually. *See Mickles,* 887 F.3d at 1280; *Campbell*, 903 F.3d at 1109; *Halle*, 842 F.3d at 226; *Alvarez*, 605 F.3d at 450; *see also Nerland*, 564 F. Supp. 2d at 1025–26 ("[T]he effect of a court order directing the decertification of the conditional class in this case would be a dismissal all of the opt-in plaintiffs without prejudice."). Further, at the pleadings stage, named plaintiffs must plead sufficient facts to state a claim individually, where opt-in plaintiffs bear no such burden. *See Rosario*, 247 F. Supp. 3d at 566; *Gomez*, 636 F. Supp. 3d at 754; *Ocean S. v. L.A. Cnty.*, 2024 U.S. Dist. LEXIS 158702, *39–40 (C.D. Cal. Jun. 11, 2024) ("[E]ach Named Plaintiff at this stage must meet his or her 'own procedural burden under Rule 12(b)(6) and the pleading standards

of *Twombly* and *Iqbal*.'"). Each of these distinctions reflect the simple fact that the efficiencies of FLSA collective litigation only work if opt-in plaintiffs are "held to a lesser standard than FLSA named plaintiffs or other plaintiffs who join in civil actions." *Halle*, 842 F.3d at 225 n.9.

Indeed, Target seems to recognize that opt-in plaintiffs are held to this lesser standard because it has permitted, without objection, almost a dozen unilateral post-answer withdrawals of opt-in plaintiffs throughout the *Babbitt* and *Jibowu* litigation. *Babbitt*, Dkt. 221, 267, 409, 461, 489, 497; *Jibowu*, Dkt. 163. Target can only point to one withdrawal notice which was predicated by any kind of Court Order purportedly authorizing said withdrawal, and even then, that order only authorized that misidentified individuals' opt-in notices be "withdrawn," not dismissed. *Babbitt*, Dkt. 319. Target even had a perfect opportunity to raise Rule 41(a) at the outset of the *Becerra* case because opt-in Joseph Messeck withdrew from the *Babbitt* litigation using the same mechanism at issue here. Instead, Target raised no objection, even when it sought to dismiss the complaint in that case. *See Becerra*, Dkt. 54. The reason for Target's silence on these withdrawals is simple: such withdrawals are routinely permitted before final certification in FLSA litigation, in no small part because opt-in plaintiffs' "action" remains contingent on final certification. And, most certainly, Target has unquestionably and consistently acted as though, viewed, and treated anyone whose opt-in has been withdrawn from

*Babbitt* as no longer in the case. Apparently, however, it now must wish to take the position that they *remain* in the case.[6]

In light of the practice of many courts—including this one—permitting opt-in plaintiffs to unilaterally withdraw their consent prior to certification of an FLSA collective, and indeed in light of its own actions in this very case over the course of years, Target should not be permitted to remain silent about its Rule 41(a) objections to Spry's unilateral withdrawal in *Becerra* and then demand strict compliance with the Rule once Spry files a subsequent suit asserting her now-dismissed FLSA collective rights.

---

[6] When an employee opts into an FLSA collective action prior to that claim even surpassing the pleadings stage, as here, that opt-in plaintiff cannot reasonably be said to have a claim—no less an "action" described by Rule 41(a)—capable of "dismissal." Since the Court in *Becerra* found that the FLSA collective action claims in that case could not even pass the pleadings stage, Spry's consent to join was functionally meaningless besides preserving her claim under the statute of limitations in that case. In this sense, Spry's withdrawal stands in stark contrast to those cases cited by Target, which involved attempted unilateral withdrawals of opt-ins *after* conditional certification. *See Reyes v. Texas EZPAWN, L.P.*, No. V-03-128, 2006 WL 3513936 (S.D. Tex. Dec. 6, 2006); *Devries v. Morgan Stanley & Co. LLC*, No. 12-81223-CIV, 2015 U.S. Dist. LEXIS 149643, *8–9 (S.D. Fla. Oct. 30, 2015). In each of those cases, the FLSA collective action claim surpassed the pleadings stage and conditional certification, extensive discovery had already been conducted, and motions for final certification and decertification were pending. *See Reyes*, 2006 WL 3513936; *Devries*, 2015 U.S. Dist. LEXIS 149643, *8–9. In *Devries*, the court specifically noted that strict enforcement of Rule 41(a) was appropriate where the failure to comply was "highly prejudicial" to defendants taking into account the discovery already conducted. No such issue arises in this case.

It is also noteworthy that in both *Reyes* and *Devries*, the Court found the unilateral withdrawal of opt-in plaintiffs improper after the defendants made a motion *in that case* either seeking dismissal of withdrawn opt-in plaintiffs, *Reyes*, 2006 WL 3513936 at *1, or invalidation of the withdrawals at issue, *Devries*, 2015 U.S. Dist. LEXIS 149643 at *8–9. Here, Target failed to submit any motion in the *Becerra* case to invalidate or strike the withdrawal of Spry, instead raising it only now in an entirely separate case initiated by Spry.

**D. This Matter Should Not Be Stayed.**

While federal courts are afforded a great deal of discretion in granting stays of litigation to manage their dockets, the Court must "begin[] with the premise that it has a 'duty…to adjudicate a controversy properly before it.'" *Haworth v. New Prime*, 448 F. Supp. 3d 1060, 1063–64 (W.D. Mo. 2020) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976)). "A stay is extraordinary relief, and the requesting party must make out a clear case of hardship or inequity in being required to go forward." *Id.* at 1064 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)) (internal quotation marks omitted). Here, Target cannot show that it will be prejudiced by continuing to litigate this matter, especially when compared to the prejudice faced by members of the putative collective.

Staying this action would severely prejudice both Spry and members of the putative collective by delaying conditional certification and notice to potential collective members who have already been subject to pressure tactics by Target. In FLSA collective litigation, opt-in plaintiffs must consent to join a collective action prior to the statute of limitations for their individual claims expiring – their consent does not "relate back" to the filing of the initial complaint in the case. *See Patton v. Stolle Mach. Co. LLC*, Civil Action No. 14-cv-03392-WJM-KLM, 2015 U.S. Dist. LEXIS 45986, *3–4 (D. Colo. Apr. 7, 2015). This accordingly means that delaying conditional certification and notice could effectively eliminate the claims of certain potential opt-ins. Additionally, for those

potential opt-ins whose claims are not eliminated entirely, the delay still diminishes the amount of eligible overtime wages they can secure. *Id.*[7]

A stay also runs the risk of allowing evidence to become stale and witness memories to fade, which inhibits Plaintiffs' ability to make the evidentiary showings required for relief. *See Haworth*, 448 F. Supp. 3d at 1065 (noting that evidence becoming stale overtime constituted prejudice to plaintiff and weighing against granting a stay). This is particularly concerning in this case given that Target has shown its willingness to engage in activities that pressure ETLs into either not participating in litigation or signing deceptive documents that could actively undermine their claims should they bring an FLSA claim at a later date. *See* Ex. B, Spry Decl. ¶¶ 4–5, 9–13.

Moreover, a stay would be improper in this case because this case involves a more recent group of opt-in ETLs with distinct interests compared to the previous *Babbitt* and *Becerra* collectives. *See Allen v. Suntrek Tours, Inc.*, No. CV-12-5165, 2013 U.S. Dist. LEXIS 42814, *8–9 (C.D. Cal. Mar. 25, 2013) (finding that a stay under the duplicative litigation doctrine was not warranted where a subsequently filed FLSA lawsuit did not involve the exact same collective as the previously filed lawsuit). This case is properly before this Court, so Plaintiffs have the right to vindicate their FLSA collective action

---

[7] Although counsel for Spry previously consented to a stay in the *Jibowu* case while conditional certification was pending in *Babbitt*, *see Jibowu*, Dkt. 180, that consent came in a fundamentally different posture: notice in *Jibowu* had already been sent out and consent had been closed, meaning putative collective members would not be subject to the prejudice that would arise should the court stay this case at such an early stage.

rights. Target can only point to prejudice in the form of potentially "duplicative discovery burdens," MTD at 13, but because the collectives in *Spry* and *Babbitt* contain almost no overlap, there would be minimal duplication. Moreover, insofar as there is any increased cost associated with engaging in discovery for *Babbitt* and *Spry* simultaneously, that burden is borne equally by the Plaintiffs themselves. *See In re Term Commodities Cotton Futures Litig.*, 2013 U.S. Dist. LEXIS 65797, *23 (S.D.N.Y. 2013) (discounting a claim of prejudice when that prejudice "affect[s] all the parties equally"). Accordingly, a stay would only impose prejudice on those members of the putative collective while affording little benefit to the Court or Target.

As Target mentioned, this Court has repeatedly indicated that "Plaintiffs…would benefit from a resolution of their FLSA class claims in an expeditious as possible manner." *Babbitt v. Target Corp.*, No. 20-cv-490 (DWF/ECW), 2025 U.S. Dist. LEXIS 4950, *22 (D. Minn. Jan. 10, 2025). Plaintiffs agree. The members of the putative collective in this case—many of whom were wrongfully denied their right to proceed in the *Babbitt* case—should be granted their right to proceed in this matter as expediently as possible.

### E. Plaintiffs Do Not Oppose Extending Target's Deadline to Respond to Arilotta's Individual FLSA Claim.

In its Motion to Dismiss, Target seeks an extension on its deadline to respond to Arilotta's individual FLSA claim until 14 days after a ruling on this motion. Plaintiffs do not object to the Court extending the time for Target to respond to Arilotta's individual FLSA claim as requested.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny Target's Motion to Dismiss and deny Target's alternative request for a stay in this matter.

Dated: September 9, 2026

Respectfully submitted,

By: /s/ *Christopher T. Hadsall*
CHRISTOPHER T. HADSALL
(admitted *pro hac vice*)
NICHOLAS A. MIGLIACCIO
(admitted *pro hac vice*)
MIGLIACCIO & RATHOD LLP
412 H St. NE, Suite 302
Washington, D.C. 20002
(202) 470-3520 (Tel.)
(202) 800-2730 (Fax)
chadsall@classlawdc.com
nmigliaccio@classlawdc.com

SETH R. LESSER
(admitted *pro hac vice)*
CHRISTOPHER M. TIMMEL
(admitted *pro hac vice)*
JESSICA RADO
(admitted *pro hac vice)*
KLAFTER LESSER LLP
2 International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
Facsimile: (914) 934-9220
seth@klafterlesser.com
Christopher.timmel@klafterlesser.com
Jessica.rado@klafterlesser.com

REBECCA S. PREDOVAN
(admitted *pro hac vice)*
MARC S. HEPWORTH
(admitted *pro hac vice)*
CHARLES GERSHBAUM
(admitted *pro hac vice)*

DAVID A. ROTH
(admitted *pro hac vice)*
HEPWORTH GERSHBAUM & ROTH, PLLC
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801
marc@hgrlawyers.com
cgershbaum@hgrlawyers.com
rpredovan@hgrlawyers.com
droth@hgrlawyers.com

MICHAEL A. GALPERN
(admitted *pro hac vice*)
JAVERBAUM WURGAFT HICKS KAHN
WIKSTROM & SININS PC
Laurel Oak Corporate Center
1000 Haddonfield-Berlin Road
Suite 203
Vorhees, New Jersey 08043
mgalpern@lockslaw.com

RACHHANA T. SREY
NICHOLS KASTER PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612-256-3200
srey@nka.com

RICHARD E. HAYBER
(admitted *pro hac vice)*
HAYBER, MCKENNA, & DINSMORE, LLC
750 Main Street, Suite 904
Hartford, CT 06103
Telephone: 860-522-8888
rhayber@hayberlawfirm.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2026, a true and correct copy of the foregoing document was filed with the Clerk of the Court via electronic filing system and accordingly served on all counsel of record.

Dated: September 9, 2026

/s/ *Christopher T. Hadsall*
Christopher T. Hadsall

***Attorney for Plaintiffs***