**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CHRISTIE SPRY and MICHAEL ARILOTTA, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. 0:26-cv-2027-DWF-ECW |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF SPRY'S CLAIM AND STRIKE PLAINTIFFS' COLLECTIVE CLAIM IN THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STAY ACTION PENDING *BABBITT v. TARGET CORP.***

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. SPRY'S CLAIM SHOULD BE DISMISSED .......... 2

A. Spry's Arguments Are Inconsistent With Plaintiffs' Prior Position. .......... 2

B. The Court's *Becerra* Order Did Not Dismiss Opt-In Claims. .......... 3

C. Spry's Withdrawal Remains Legally Ineffective. .......... 6

III. ARILOTTA'S COLLECTIVE CLAIMS SHOULD BE DISMISSED .......... 9

A. Plaintiffs' Overlap Argument Misses the Point. .......... 9

B. Plaintiffs' Claims of Target "Interference" Are Baseless. .......... 11

C. The Right to an Individual Claim Does Not Entitle Plaintiffs to a Collective. .......... 13

IV. ABSENT DISMISSAL, A STAY IS WARRANTED .......... 14

V. CONCLUSION .......... 15

## I. INTRODUCTION

Plaintiffs' opposition is built on a false premise: that Target seeks to "foreclose" or "deny" ETLs[1] the right to pursue claims under the FLSA. No one is prevented from bringing an FLSA claim if Target prevails on this Motion. Every ETL—including Michael Arilotta and every member of the putative collective—retains the absolute right to bring an individual FLSA claim. Target has never argued otherwise. Indeed, Target expressly acknowledged this point both in its Opening Brief and in the *Becerra* proceedings. *See* Opening Brief at 2; *Becerra*, Dkt. 65 at 2.

The only question presented by this Motion is whether additional people should be invited to bring FLSA claims through a court-authorized collective notice mechanism in yet another iteration of the same nationwide collective action that this Court has already dismissed in *Becerra*. That is not the same thing as denying the ability to make a claim. The difference between preserving the right to bring a claim and being invited to join a collective proceeding is dispositive, and Plaintiffs' failure to engage with this distinction is fatal to their opposition.

Strip away Plaintiffs' rhetoric, and their arguments reduce to the following: (1) the putative collective no longer overlaps with *Babbitt*—which is beside the point, because Target's judicial-economy argument was never about individual overlap; (2) Target supposedly interfered with notice and participation in *Babbitt*—which is baseless and demonstrably false; (3) Spry's claims were automatically dismissed when the Court struck

---

[1] All terms used but not defined herein shall have the meanings ascribed to them in Target's opening brief. Dkt. 44 ("Opening Brief").

the *Becerra* collective—a last-minute shift in position that contradicts Plaintiffs' prior statements and actions, and which misreads this Court's Order; and (4) a stay would prejudice potential collective members whose claims might expire—which actually underscores Target's position that no one is deprived of any right because any ETL with a viable claim can file an individual action to toll the statute of limitations.

Plaintiffs' Opposition is an attempt to distract from the fundamental reality that this lawsuit represents the fifth attempt by the same counsel to launch a nationwide FLSA collective action against Target on the same ETL misclassification theory even though one is already ongoing. *See Locicero v. Target Corp.*, No. 16-cv-05592 (D.N.J.); *Jibowu v. Target Corp.*, No. 1:17-cv-03875 (E.D.N.Y.); *Babbitt v. Target Corp.*, No. 0:20-cv-00490 (D. Minn.); *Becerra v. Target Corp.*, No. 0:25-cv-00535 (D. Minn.). Preferring to let *Babbitt* proceed and avoid confusion and waste of judicial and party resources, the Court dismissed the *Becerra* collective. Plaintiffs' counsel did not heed the Court's guidance, instead filing yet another action. At some point, enough is enough.

## II. SPRY'S CLAIM SHOULD BE DISMISSED

### A. Spry's Arguments Are Inconsistent With Plaintiffs' Prior Position.

Plaintiffs' arguments in response to Target's motion reflect a shift that is inconsistent with Plaintiffs' prior position. Plaintiffs now contend that this Court's Order striking the collective action claim from *Becerra* dismissed Spry from that action. But this new position is impossible to square with Plaintiffs' actions in *Becerra* and this case.

If Plaintiffs actually believed that this Court's *Becerra* Order automatically dismissed Spry's individual opt-in claim, there would have been no need for her to file a

subsequent notice seeking to withdraw Spry's consent to join. *See Becerra*, Dkt. 105. Yet that is exactly what counsel did on March 24, 2026—five months after the Court's Order, and immediately prior to commencing this action. Obviously, Spry understood that she was still a party to the *Becerra* case.

The meet and confer process that preceded this motion confirms that fact. At no point during that process did Spry's counsel suggest that this Court's Order dismissed Spry from *Becerra*. Instead, counsel argued that Spry's withdrawal from *Becerra* notwithstanding the failure to comply with Federal Rule of Civil Procedure, Rule 41. Only after receiving Target's motion did Spry shift to the newly contrived argument that she had been dismissed from *Becerra* at the time of the Court's Order.[2]

**B. The Court's *Becerra* Order Did Not Dismiss Opt-In Claims.**

The Court did not dismiss Spry's opt-in claims when it granted Target's motion in *Becerra*. *Contra* Dkt. 49 ("Opp.") at 13–17. Plaintiffs conflate two distinct procedural events: (1) a court denying conditional certification of a collective or decertifying a conditionally certified collective, and (2) a court striking or dismissing collective action claims from a complaint. Every case plaintiffs cite addresses the first scenario, in which the order dismisses the opt-ins' claims. None addresses the second.

[2] Spry's new position regarding her dismissal from *Becerra* is also incompatible with her failure to take any steps to preserve her FLSA claims. As the Court knows (and as Spry's counsel themselves argue in opposition to Target's motion), FLSA claims are subject to a running statute of limitations. If Spry truly believed she was dismissed from *Becerra*, she offers no explanation for why she waited five months before taking action to preserve her claims. Rather, it is clear from Spry's conduct that knew that she was still a party to *Becerra* until she attempted to withdraw her consent. Otherwise, she would not have acted so quickly to commence this action to preserve her claims after withdrawing from *Becerra*.

Plaintiffs' reliance on *Halle v. West Penn Allegheny Health System, Inc.*, 842 F.3d 215 (3d Cir. 2016), *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018), *Mickles v. Country Club Inc.*, 887 F.3d 1270 (11th Cir. 2018), and *Alvarez v. City of Chicago*, 605 F.3d 445 (7th Cir. 2010), is therefore misplaced. Opp. at 14–16. Those cases address what happens to opt-in plaintiffs when a court denies conditional certification or decertifies a conditionally certified collective—not what happens when a court strikes collective allegations as in *Becerra*. *See Campbell*, 903 F.3d at 1103-04, 1121 (affirming post-discovery decertification of two FLSA collectives and dismissing opt-ins without prejudice after officers failed to establish a department-wide overtime policy); *Mickles*, 887 F.3d at 1280-81 (affirming denial of conditional certification as untimely and remanding for opt-in plaintiffs to be dismissed without prejudice or allowed to proceed individually); *Alvarez*, 605 F.3d at 450 (holding that decertification of collective "reverts to one or more individual actions on behalf of the named plaintiffs"). And *Halle*, the case plaintiffs cite most heavily, involved a district court striking collective allegations on *issue preclusion* grounds where there was a prior decertification order in an earlier case. *See Halle*, 842 F.3d at 221–22. None of those cases are analogous to *Becerra*, where this Court struck the collective claim without dismissing the claims of individual opt-ins.[3]

[3] Plaintiffs also invoke *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66 (2013), for the proposition that opt-in plaintiffs always "remain free to vindicate their rights in their own suits." Opp. at 15–16. But *Genesis HealthCare* addressed the mootness implications of an offer of judgment to a named plaintiff—a question wholly unrelated to the procedural consequences of striking duplicative collective allegations. *See Genesis HealthCare Corp.*, 569 U.S. at 73-78. *Genesis HealthCare* says nothing about whether striking collective allegations in one case automatically dismisses the individual claims of opt-in plaintiffs who already joined.

The distinction matters. When a court denies conditional certification or decertifies a conditionally certified collective, it determines that the collective mechanism is inappropriate for that particular case. The usual consequence—dismissal of opt-in claims without prejudice—flows from the determination that the collective should not proceed as such. But when a court strikes collective allegations as duplicative of another pending action, it makes an entirely different determination: that the collective allegations are redundant. The Court is not adjudicating or dismissing any individual claims. It is simply declining to authorize a duplicative collective proceeding.

That is exactly what happened in *Becerra*. The Court's order did not deny certification. It dismissed the collective claim because it was duplicative of *Babbitt*. The Court's order expressly stated that "Plaintiffs, or other ETLs who never received notice in *Babbitt* or *Jibowu*, are *not* precluded from pursuing their FLSA claims on an individual basis." *Becerra*, Dkt. 84 at 9 (emphasis supplied). That language confirms that those claims remain in the case, not that they were dismissed. Plaintiffs attempt to read the Court's statement as merely "reinforc[ing] the principle" that opt-in plaintiffs can bring new claims after dismissal, Opp. at 16, but that reading requires inserting words that are not there. The Court did not say that opt-in plaintiffs "will be free" or "may in the future" pursue individual claims—language that would suggest future action. The Court said they "are not precluded"—present tense—"from pursuing their FLSA claims." *Becerra*, Dkt. 84 at 9.

That language reads most naturally as preserving existing claims, not as contemplating new ones.[4]

Spry's individual FLSA claim remains pending in *Becerra*—as the Court's Order and plaintiffs' own withdrawal notice contemplated—and her attempt to prosecute the same claim in this action is duplicative.

**C. Spry's Withdrawal Remains Legally Ineffective.**

Target demonstrated in its Opening Brief that, after the defendant has answered, a plaintiff may be voluntarily dismissed only through a court order or "stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii). Target answered the operative *Becerra* complaint on October 1, 2025. *See Becerra*, Dkt. 80. Spry never obtained a court order or Target's agreement before unilaterally filing her purported withdrawal on March 24, 2026. *See Becerra*, Dkt. 105.

Plaintiffs' authorities do not establish that unilateral withdrawal is permissible over a defendant's objection. Three of those cases—*Deutsch v. My Pillow, Inc.*, 2023 U.S. Dist. LEXIS 73209, at *3 (D. Minn. Apr. 27, 2023); *Elliott v. Schlumberger TechnologyTech. Corp.*, 2017 U.S. Dist. LEXIS 229796, at *3 (D.N.D. Jan. 6, 2017); *Morales v. Farmland Foods, Inc.*, 2011 U.S. Dist. LEXIS 151983, at *6 (D. Neb. Dec. 15, 2011)—merely note in passing that certain opt-ins withdrew, without noting whether those withdrawals were challenged or otherwise analyzing whether they complied with Rule 41(a). None of those

[4] Indeed, Target's reading of the Court's order is further bolstered by the fact that Target has consistently distinguished between individual FLSA claims and collective allegations. In *Becerra*, Target expressly moved to dismiss *only* the collective allegations and had no objection to the pursuit of individual FLSA claims in *Becerra*. *See Becerra*, Dkt. 54 at 15.

courts addressed, let alone endorsed, unilateral withdrawal without a court order or the consent of the other party.

Plaintiffs' remaining two cases are equally unavailing. In *Adams v. School Board of Hanover County*, 2008 U.S. Dist. LEXIS 96296 (E.D. Va. Nov. 26, 2008), the opt-in plaintiffs did not simply file a bare notice of withdrawal; they filed a formal motion for leave to withdraw their written consent. *Id.* at *54. Spry's withdrawal stands in stark contrast because she filed a bare notice and, the same day, filed this lawsuit asserting the very FLSA collective claims the Court had just dismissed. And the footnote Plaintiffs cite in *Duke v. Harvest Hospitalities, Inc.*, 2021 U.S. Dist. LEXIS 177091, at *5 n.4 (W.D. Pa. Sep. 17, 2021), merely observes that "[s]ome courts have allowed the unopposed withdrawal of an opt-in plaintiff's consent." But every case compiled in that footnote involved an opt-in who simply walked away from litigation, not one who withdrew and immediately filed a new collective action to circumvent a court order dismissing the collective action claims as duplicative. *Duke*, 2021 U.S. Dist. LEXIS 177091, at *5 n.4.

Moreover, Plaintiffs' argument that Target "permitted, without objection, almost a dozen unilateral post-answer withdrawals" in *Babbitt* and *Jibowu* (Opp. at 19) mischaracterizes the record. Target expressly *agreed* to those withdrawals in specific circumstances: misidentified opt-ins, individuals outside the collective scope, and individuals who indicated they had no intention of pursuing a claim. This is compliance with Rule 41(a)(1)(ii), not a waiver of it. *See, e.g.*, *Babbitt*, Dkt. 319 (Order authorizing withdrawal of misidentified opt-ins), Dkt. 321 (notice of withdrawal pursuant to Court's Order).

Plaintiffs also erroneously fault Target for not raising a Rule 41(a) objection to Messeck's withdrawal from *Babbitt* in its motion to dismiss the *Becerra* FLSA collective (*Becerra*, Dkt. 52). Opp. at 19. But at the time Target moved to dismiss the *Becerra* FLSA collective, Messeck had already accepted an offer of judgment (*Becerra*, Dkt. 45) and was no longer in the case, thereby mooting any Rule 41(a) argument that Target could have made in its dismissal motion. Moreover, Target did not initially object to Messeck's withdrawal because Plaintiffs' counsel represented that any subsequent action would include only state-law claims, not new FLSA collective allegations. Opening Brief at 5. Target had no reason to oppose a withdrawal that, based on counsel's own representation, would not result in a duplicative collective action. Spry's withdrawal was an entirely different matter. She withdrew from *Becerra* unilaterally—without giving Target an opportunity to oppose—and simultaneously filed this lawsuit asserting the very FLSA collective claims this Court had just dismissed. *See Becerra*, Dkt. 105; *Spry*, Dkt. 1, ¶ 42.

Finally, plaintiffs' attempt to distinguish *Reyes v. Texas EZPAWN, L.P.*, 2006 WL 3513936 (S.D. Tex. Dec. 6, 2006), and *Devries v. Morgan Stanley & Co. LLC*, 2015 WL 6670109 (S.D. Fla. Oct. 30, 2015), on the ground that those cases involved post-certification withdrawals should be rejected. Opp. at 20 n.6. Rule 41(a) draws no distinction between pre- and post-certification withdrawals. It applies whenever a defendant has answered—full stop.

## III. ARILOTTA'S COLLECTIVE CLAIMS SHOULD BE DISMISSED

### A. Plaintiffs' Overlap Argument Misses the Point.

Plaintiffs devote considerable space to arguing that they have eliminated the overlap between the putative collective in this case and the *Babbitt* collective. Opp. at 9–12. But the thrust of Target's argument, which Plaintiffs essentially ignore, is that launching yet another nationwide collective action on the same ETL misclassification theory, while *Babbitt* remains pending with over 3,500 opt-in plaintiffs and extensive ongoing discovery, will divert the parties' resources from the orderly resolution of that already-pending litigation and risk inconsistent rulings. Opening Brief at 3. The issue is not whether the individuals overlap; it is whether opening a second front in the same war serves any purpose other than to multiply proceedings unnecessarily.

Plaintiffs' counsel recognized this principle when they joined with Target in representing to the Eastern District of New York and this Court that a stay was warranted in *Jibowu* because the *Jibowu* and *Babbitt* actions were "virtually identical" and staying the action would avoid "duplication of effort." *See Jibowu*, Dkt. 180 at 1–2. Now, the parties are engaged in a massive second phase of discovery effort in *Babbitt* involving more than 100 opt-in depositions and more than 300 sets of written discovery. *Babbitt*, Dkt. 363. The core legal and factual issues in *Babbitt*—whether Target properly classifies ETLs as exempt based on their duties—are identical to the issues in this case. Both cases involve the same ETL positions, the same exemption theory, and the same alleged nationwide policy. Proceeding simultaneously will divert resources from *Babbitt* to this case, delay discovery in *Babbitt*, waste time repeating the discovery from *Babbitt*, and create the risk

of inconsistent results. Precluding plaintiffs from proceeding collectively—which dismisses *no one's* FLSA claims—avoids those results.

Plaintiffs argue in conclusory fashion that, "because the collectives in *Spry* and *Babbitt* contain almost no overlap, there would be minimal duplication." Opp. at 23. But the duplication is in the *litigation itself*, not the identity of the plaintiffs. The same legal issues, factual disputes, discovery demands, and motion practice would be repeated in a parallel proceeding even if there are different ETLs from one proceeding to the next. That is precisely the inefficiency the first-filed rule and principles of judicial economy are designed to prevent. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Resolution of *Babbitt* will also materially inform, if not resolve, the core questions here; whether the *Babbitt* court determines that Target properly classifies ETLs as exempt will bear directly on any later ETL asserting the same misclassification theory. The efficient course is to permit *Babbitt* to resolve before authorizing another collective proceeding.

Plaintiffs cite *Gander Mountain Co. v. Cabela's, Inc.*, No. 06-2857, 2007 U.S. Dist. LEXIS 108402 (D. Minn. Nov. 9, 2007), and *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000), for the proposition that a lawsuit based on "events arising after" the first-filed complaint is not duplicative—thereby "making *Colorado River* abstention inappropriate." Opp. at 10. But both cases actually reinforce Target's position. In *Curtis*, the plaintiffs' first suit alleged racial discrimination based on the circulation of an offensive email at work; the "new events" were the plaintiffs' subsequent termination and constructive discharge—events that had not yet occurred when the first complaint was filed. *Curtis*, 226

F.3d at 136–38. The Second Circuit reversed dismissal only as to those genuinely new claims while *affirming* dismissal of all claims arising from the same underlying conduct as the first suit. *Id.* at 140–41.

Similarly, in *Gander Mountain*, the first action concerned the enforceability of a noncompetition agreement; the court kept a stay in place on three counts of the second action (tortious interference, unfair competition, and deceptive trade practices) precisely because they "closely paralleled" the claims in the earlier case. *Gander Mountain Co.*, 2007 U.S. Dist. LEXIS 108402, at *3, *10-12. It lifted the stay only as to a separate trademark-infringement count that was "wholly separate from the allegedly unlawful conduct which underlies" the stayed claims. *Id*. at *12. Here, there is nothing "arising after" or "wholly separate." *Spry* does not assert a new legal theory, a new type of FLSA violation, or even a new factual predicate. It asserts the identical ETL misclassification theory, the same FLSA exemption arguments, and the same alleged corporate policies already being litigated in *Babbitt* and which the Court said could not be litigated in *Becerra*. Further, Spry seeks to represent a putative FLSA collective of individuals who worked in the same ETL positions covered in *Babbitt* and *Becerra*. *See Spry*, Dkt. 36, ¶ 43. The fact that additional employees may have experienced the same alleged violation does not mitigate or change the duplicative nature of the *Spry* action.

**B. Plaintiffs' Claims of Target "Interference" Are Baseless.**

Plaintiffs baselessly assert that the Court should permit a new collective in order to "counteract the efforts of Target to limit notice and participation in *Babbitt* or similar ETL

misclassification cases." Opp. at 12. Target has done nothing to limit notice or participation in *Babbitt* or any other proceeding.

The undisputed record shows that Target complied with every notice obligation the Court imposed in *Babbitt*: notice was sent to more than 15,000 individuals, more than 3,500 opted in, and Target never challenged the notice or interfered with its distribution or the collection of consent forms. *See Babbitt*, Dkts. 155, 158, 350. Plaintiffs' complaint is more properly directed to the Court-ordered structure of the proceeding. The opt-in period closed on June 13, 2023, because the Court set that deadline, so ETLs hired after necessarily could not participate in the collective. That is the ordinary operation of an FLSA collective action, not Target interference.

Plaintiffs cite the Spry Declaration (Ex. B, ¶¶ 4-6, 9-11, 13, 15-16), but none of it is relevant to the question before this Court. Even if the Court credits Spry's account of her interview by Target's attorney, the Court already considered and rejected materially identical accusations in *Becerra*, finding the complained-of conduct was no more than "an isolated incident at a single Target store" and that plaintiffs had "not identified to date any Target employee at any other store that has experienced the conduct." *Becerra*, Dkt. 68 at 22:13–23:7. These accusations are a distraction from the issue at hand, are inappropriate for this Motion, and should be disregarded. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

### C. The Right to an Individual Claim Does Not Entitle Plaintiffs to a Collective.

The core deficiency in Plaintiffs' opposition is the persistent conflation of two fundamentally different concepts: the right to bring a claim and the right to be invited to join a collective. These rights are fundamentally different.

Section 216(b) of the FLSA provides a mechanism for collective actions, but it does not guarantee that every potential plaintiff will be invited to join one. The collective mechanism exists for judicial efficiency. As the Supreme Court recognized in *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989), the collective action mechanism serves "the legitimate goal of avoiding a multiplicity of duplicative suits." Allowing yet another duplicative collective on the same theory defeats that purpose.

Plaintiffs characterize Target's position as one that would leave ETLs "just out of luck." Opp. at 8–9. That is flat wrong. Every ETL within the putative collective retains the right to file an individual FLSA claim even if the Court grants Target's Motion. No one is deprived of any substantive right. If Target prevails, the only thing that changes is whether this Court invites additional people to join this proceeding. That is a matter of judicial discretion, not a statutory entitlement.

Plaintiffs' argument that denying collective treatment would "forc[e] similarly situated ETLs not protected by *Babbitt* to file their claims individually, which could lead to an even greater number of FLSA suits" only proves Target's point. Opp. at 12. If potential collective members choose to file individual actions, they are exercising the very right that Target has always acknowledged they possess. And if they do not, then the

practical effect of this Motion is that fewer proceedings will be initiated, which serves the judicial-economy principles Target has invoked.

Plaintiffs suggest that Arilotta, who began working at Target in July 2025, cannot fairly be denied the "right to collective relief." Opp. at 9. But Arilotta has no substantive "right" to collective relief; he has a right to bring an FLSA claim which Target expressly acknowledged he may do, consistent with Target's arguments and this Court's ruling in *Becerra*. *See Becerra*, Dkt. 84 at 9. Whether the Court should exercise its discretion to authorize a collective action mechanism is a separate question, one that depends on considerations of judicial economy, the avoidance of duplicative proceedings, and the orderly administration of justice. Those considerations weigh heavily against permitting yet another collective on the same theory.

Plaintiffs also suggest that a stay should be denied because Target's claim of prejudice is undermined by the fact that both parties bear discovery costs. Opp. at 23 (citing *In re Term Commodities Cotton Futures Litig.*, 2013 U.S. Dist. LEXIS 65797 (S.D.N.Y. 2013)). But the question is not who bears the costs, it is whether the costs are justified. Duplicating the same litigation across two proceedings benefits no one—not the Court, not the parties, and not the putative collective members.

## IV. ABSENT DISMISSAL, A STAY IS WARRANTED

At the very least, a stay would avoid some of the concerns of prejudice Target has raised and is within the Court's inherent authority. Opening Brief at 15.

Plaintiffs argue that a stay would prejudice potential opt-in members because their claims might expire while waiting. Opp. at 21–22. They are wrong. If an ETL's limitations

period expires after this case is stayed, then that is the natural operation of the statute of limitations—not a deprivation of rights. The FLSA's statute of limitations runs unless and until a plaintiff takes affirmative action to toll it by filing a claim or opting in to a collective. That is true of every FLSA claim, whether or not there is a pre-existing collective action. Indeed, other companies that are not facing collective actions have employees who must file claims to vindicate their FLSA rights because they cannot join an extant collective. Those employees are not deprived of anything. Nor are potential collective members here. This is exactly as the Court contemplated when it stated in *Becerra* that ETLs "are not precluded from pursuing their FLSA claims on an individual basis." *Becerra*, Dkt. 84 at 9.

Plaintiffs also raise concerns about evidence becoming stale and witnesses' memories fading. Opp. at 22. But in *Babbitt*, the parties are actively conducting depositions and producing documents. A stay of this action does not create any unique risk of evidence loss because the parties are gathering and preserving evidence in the ongoing *Babbitt* proceedings.

## V. CONCLUSION

For these reasons, Target asks this Court to grant its motion to dismiss this action or, in the alternative, to stay this matter pending the resolution of *Babbitt*.

NILAN JOHNSON LEWIS PA

Dated: September 23, 2026

By: *s/ Joseph G. Schmitt*

Joseph G. Schmitt (Reg. No. 231447)
Chris Amundsen (Reg. No. 0388981)
Courtney E. Ward-Reichard (Reg. No. 0232324)
Courtney L. Burks (Reg. No. 0399487)
250 Marquette Avenue South, Suite 800
Minneapolis, Minnesota 55401
Telephone: (612) 305-7500
Facsimile: 612) 305-7501
jschmitt@nilanjohnson.com
camundsen@nilanjohnson.com
cward@nilanjohnson.com
cburks@nilanjohnson.com

JEFFREY D. WOHL (*pro hac vice forthcoming*)
398 Primrose Road, Suite 225
Burlingame, CA 94010
Phone: 650-437-7042
Fax: 612-305-7501
jwohl@nilanjohnson.com

Sara B. Tomezsko (*pro hac vice forthcoming*)
Daniel S. Richards (*pro hac vice forthcoming*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
saratomezsko@paulhastings.com
danrichards@paulhastings.com

ATTORNEYS FOR DEFENDANT
TARGET CORPORATION